CASE 87—AGREED CASE—JUNE 24.

## City of Louisville v. Wilson.
### Same v. Nevin.
### Same v. Hoertz.
### Same v. Martine.
### Same v. O'Connell.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. CONSTITUTIONAL LAW—REDUCTION OF SALARY—STATUTORY CONSTRUCTION.—The provision in the charter for cities of the first

class (sections 2824 and 2861 of the Kentucky Statutes), that members of the boards of public works and public safety in such cities "shall receive a salary of not less than $2,500," does not fix the salaries of such officers; and there being no salary fixed, an ordinance passed after the appointment and qualification of the members of those boards fixing their salaries at $3,000, was not violative of the provisions of section 161 of the Constitution, prohibiting any change in the compensation of municipal officers during their terms of office.

2. MUNICIPAL OFFICERS.—Members of such boards are "municipal officers" within the meaning of section 161 of the Constitution, and their compensation after being once fixed can not be changed during their terms.

3. SAME.—The secretary of the board of public works in a city of the first class, who is required to execute a bond for the faithful discharge of his duties, and who is custodian of the journals of the board's proceedings and other papers and records affecting the public, the assistant bailiff of the police court, who performs the duties of a peace officer and is authorized to serve process and make arrests; and the official stenographer of the police court, whose official acts have the same verity and force as do those of the clerks of the police court, are each and all municipal officers within the meaning of section 161 of the Constitution. To constitute an officer, it is not material whether his term be for a period fixed by law or endures only at the will of the appointing power. If he be invested with some portion of the function of government, to be exercised for the public benefit, he is an officer.

HENRY S. BARKER, D. W. FAIRLEIGH AND JOHN W. BARR, JR.,

FOR APPELLANTS.

1. The city charter provides definitely that the members of the two boards shall receive a salary of not less than $2,500, and this is not dependent upon any action whatever of the general council, but is payable by force of the statute itself; in the absence of any action to the contrary by the council the salary must be considered as fixed by the charter. The salary having been fixed at the time of the appointment and qualification of the members of the two boards can not be changed during their terms. (Sec. 161 Constitution of Kentucky.)

2. The secretary of the boards of public works is not a municipal officer; his duties are only clerical, no governmental authority is delegated to the position, and no functions of the board can be

exercised by one holding the place. The office was created by the council, without specifying what length of time the occupant should serve, and it has the right at any time to abolish the place or reduce the salary. The occupant is nothing more than an employe of the municipal government.

3. The stenographer and assistant bailiff of the police court are neither officers for the same reasons given as to the secretary of the board of public works; and in addition to that the charter in section 126 prescribes what shall be the offices of the police court, and neither of them is included therein. (Charter for Cities of First Class, sec. 126.)

4. What distinguishes an "office" from an "employment" or "contract" is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the government, either legislative, executive or judicial, attaches for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer. (Abbott's Law Dictionary; Amer. & Eng. Enc. of Law, vol. 19, p. 390; Mechem on Public Offices, secs. 2 and 4; Ryan v. Mayor, 50 Howard, Pr. (N. Y.), 91; In re. Corliss, 23 Amer. Rep., 558; Geuntor v. Griffin, 4 Abbott Pr. (N. Y.), 310; People v. Langdon, 40 Mich.; O'Brien v. Mayor, 84 Hun. (N. Y.), 50; People v. Pinckney, 32 N. Y., 377; Goetzman v. Mayor, 6 Hun. (N. Y.), 132; Cramer v. Water Co., 31 Atl., 384; U. S. v. Monat, 124 U. S., 303; Collopy v. Cloherty, 95 Ky., 330; Com. v Adams, 95 Ky., 588; Hoke v. Com., 79 Ky., 574.)

PIRTLE & TRABUE AND HUMPHREY & DAVIE FOR APPELLEES.

1. The legislative provision in the city charter that the salaries of the members of the executive boards should not be less than $2,500, does not fix the salaries at that amount; but the matter is left wholly to the general council with one restriction that it should not fix such salaries at less than the amount named in the charter. And the council having failed, as was its duty, to fix these salaries before the appointment and qualification of the members of these boards, it had a right to do so afterwards. (Purcell v. Parks, 82 Ill., 346; 84 Ill., 551; State v. McDowell, 19 Neb., 442; Wheelock v. McDowell, 20 Neb., 160; Rucker v. Supervisors, 7 W. Va., 641.)

2. The clerks of the executive boards are officers within the meaning of the Constitution. They are the custodians of the records of their respective boards, and the charter and ordinances impose

City of Louisville v. Wilson.

upon them duties independent of and apart from the duties of the members of the boards. Where one performs a public function and exercises a public power independent of anybody else, he is a public officer, and not merely an employe.

3. The general council has no power over the appointment of or the fixing of the salaries of the subordinate officers selected by the members of the executive boards, except it may prescribe the limitations as to compensation. (Secs. 2809 and 2810, Ky. Stats.)

4. While the general council had no authority to fix the salaries of these subordinates, still it having attempted to do so by an ordinance, and the boards having ever since acquiesced in the salaries so prescribed by making out pay-rolls and warrants in accordance therewith. the salaries became *fixed*, and can not be changed under the provisions of section 161 of the Constitution.

DODD & DODD, CARROLL & HAGAN AND D. W. BAIRD OF COUNSEL ON SAME SIDE.

Briefs not in the record.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

It is agreed in these five cases, submitted and decided without action, as follows: Appellees Wilson and Nevin were appointed by the mayor for the term of four years, December 14, 1893, confirmed by the board of aldermen of Louisville, and immediately qualified as members respectively of the board of public safety and board of public works.

January 9, 1894, by ordinance of the general council the salary of each member of the two boards was fixed at $3,000 per annum.

By ordinance approved January 26, 1894, it was provided there should be one secretary of the board of public works, his compensation being fixed at $2,000 per annum; and January 31, 1896, appellee Hoertz was, by the board of public works, appointed secretary for the term of four years.

By ordinance approved May 21, 1894, it was provided the

compensation of deputies of the police court should be
$1,500 each, payable monthly; and January, 1895, appellee,
J. J. O'Connell, was by I. N. Vetter, bailiff of said court, ap-
pointed one of his assistants or deputies.

January 9, 1894, by ordinance, the compensation of official
stenographer of the city court was fixed at $1,000 per an-
num; and February, 24, 1894, appellee, John P. Martine, was,
by the judge of the court, appointed to the office.

December 26, 1895, the general council, composed of new-
ly-elected members, passed an ordinance, duly approved by
the mayor, changing salaries of members of the boards of
public safety and of public works to $2,500 each per annum;
that of secretary of board of public works to $1,200 per an-
num; that of deputy bailiff to $1,200 per annum; and that of
official stenographer to $900 per annum.

The main question in this case is whether the ordinance of
December, 1895, violates section 161 of the Constitution, as
follows: "The compensation of any city, county, town or
municipal officer shall not be changed after his election or
appointment or during his term of office; nor shall the term
of any such office be extended beyond the period for which
he may have been elected or appointed." And the proper
determination of it involves the inquiry whether the various
ordinances referred to, which first fixed the compensation of
these officers, were valid and effectual for that purpose.

If any of them be invalid at all it is only because they
were passed after the officers affected by them had qualified
and commenced the discharge of their duties, for all appear
to have been regularly passed and approved under authority
conferred by section 2753, Kentucky Statutes, applicable to
Louisville, a city of the first class, as follows: "Except as
otherwise herein provided, the general council may, by

ordinance, prescribe the duties, define the terms of office, fix the compensation, and the bonds and time of election of all officers and agents of the city."

But as none of those ordinances, except the particular one fixing salaries of members of the board of public safety and of the board of public works, were passed subsequent to appointment and qualification of the several officers mentioned, there is no reason for calling in question the validity of any except it may be that one.

The purpose of section 161 was to prevent as well the reduction of compensation of officers, sometimes the result of prejudice and false economy, as increase of it, sometimes brought about by importunity and undue influence on their part, and so there can not be any change at all of an officer's compensation during his term; but there is an essential difference which we are satisfied the framers of the Constitution had in mind, between fixing the amount of compensation an officer shall receive, not hitherto ascertained and settled, and changing it after it has been fixed

It is the obvious and uniform policy of government, State and municipal, as well as just to each officer, to fix his compensation definitely and certainly as to amount, except when he is paid by fees of office. And section 161 does not in terms, nor was intended to forbid or at all, relate to any statute or ordinance that for the first time does fix the salary of an officer; but it is equally necessary for the protection of both the government and officer that his salary, when once fixed, should not be changed during his term, and for no other purpose than to prevent that evil was section 161 made part of the Constitution.

It is, however, contended that section 2824 and section 2861 had the effect to fix and secure to the members respec-

tively of the board of public safety and board of public works a definite amount of compensation, the two sections being alike, and as follows: "Each member shall receive a salary of not less than twenty-five hundred dollars."

But it is plain the legislature did not intend thereby any more than to prescribe a minimum of the compensation which the general council had been, by section 2753, already empowered to definitely and authoritatively fix; and it is to us equally plain that until the ordinance of January 9, 1894, was passed and approved the members of the two boards did not have the legal right to demand nor the city treasurer legal authority to pay them any compensation whatever.

In our opinion the last-named ordinance is valid, and, consequently, the one of December 26, 1895, must be held invalid.

There can be no question of appellees Wilson and Nevin being officers in the meaning of section 161, and the remaining inquiry is whether the other appellees are.

There are various tests by which to determine who are officers in the meaning of the law, but at last, in case of uncertainty, the intention of the law-makers control. To constitute an officer it does not seem to be material whether his term be for a period fixed by law or endure at the will of the creating power; but if an individual be invested with some portion of the functions of the government, to be exercised for the benefit of the public, he is a public officer. (Meacham on Public Offices, section 1.)

The board of public works is by statute vested conjointly with the mayor with executive power, and, as its name indicates, has control and supervision of public places and public improvements, with authority to make contracts in regard thereto.

By section 2803 it has power to prescribe rules, not inconsistent with any statute or ordinance, regulating its own proceedings and conduct of its officers, clerks and employes, distribution and performance of its business, and preservation of the books, records, papers and property under its control; and, while it does not appear from the agreed statement of facts what particular duties are assigned to the secretary of the board, it is manifest he was intended to be and is more than a mere employe, for he is required to execute bond for the proper discharge of his duties, and, being next in authority to members of the board, is the proper person to keep the required journal of its proceedings, preserve books, papers and records affecting the public. In our opinion he should be held an officer in meaning of section 161.

As to appellee O'Connell performing, as assistant bailiff, the duties of a peace officer, and having authority to serve process and make arrests, there can be no question of his being an officer. Besides, the statute expressly provides for the appointment of assistant bailiff, as it does for the appointment of official stenographer, whose official acts have in degree the same verity and force as do those of the clerk of the police court.

We think appellees are all officers in the meaning of section 161.

Judgment affirmed .

Judge Guffy and DuRelle dissenting.

Judge Guffy delivered the following dissenting opinion:

The principal question involved in these five appeals is the power of the council of Louisville to regulate or change the salary or compensation of the officers named. The majority opinion of the court holds that the appellees are included within the provision of section 161 of the Constitu-

tion, which is as follows: "The compensation of any city, county, town or municipal officer shall not be changed after his election or appointment, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he may have been elected or appointed." We can not assent to that conclusion.

Section 160 of the Constitution creates the offices of mayor, or chief executive, police judge and members of the legislative boards or councils, fixes their terms of office and the manner of their selection. It seems to us that section 161, *supra*, only refers to the officers named in the preceding section, and to such other officers as are named in other sections of the Constitution.

Various offices were created by the Constitution, and we think that, upon reason as well as authority, when that instrument speaks of officers, it means only those theretofore named. The fact that section 161 follows section 160. which authorized the legislature to create other offices, does not at all sustain the contention of appellees, for it will be observed that section 161 mentions county officers and no mention is made of county officers in section 160, but in other parts of the Constitution county officers were created, and the manifest object and purpose of section 161 was to protect as well as to provide against the undue influence of such officers.

It is true that section 160 authorizes the legislature to provide for the election or appointment of other officers, and when such officers are elected by the voters of a town or city their term shall be four years. No limit is fixed to the term if the officer be appointed. Hence if section 161 includes officers not named in the Constitution an officer might be appointed for a term of ten years at a fixed salary, which must continue during ten years, although the duties of the officer might become merely nominal.

The majority opinion in these cases holds that the reason for the insertion of section 161 was twofold, viz: To make the officer secure in his compensation and free him from danger of injustice from an unfriendly power that was authorized to fix salaries and fees, and also to prevent the officers from procuring an increase of compensation by undue influence.

We heartily assent to that view, and we think that it sustains our views as to the true meaning of section 161. We can readily see that the mayor, police judge and legislative authorities of towns should be restrained as provided in the section *supra*. The police judge, being a judicial officer, ought to be free and independent of the other departments, and the same may be truly said of the mayor and legislative authorities. But is it possible that the framers of our organic law intended that the salary or fees of the thousands of subordinate officers of cities, towns and counties should be beyond the power of change during their term? We think not. There can be no reason for such intent, but upon the contrary there are many reasons which demand that such officers should be somewhat dependent upon higher authority. Such dependence would be likely to insure a faithful and efficient discharge of their duties. We know that a subordinate officer may be inefficient and negligent, yet not be liable to impeachment and removal, and it seems from the opinion of the majority of the court in the case of Todd v. Tilford that but few, if any, of the municipal officers can be removed in any other way.

It is the well-settled rule of law that the power that creates an office can abolish the same at any time, and thus leave the incumbent without either employment or compensation. And yet if the majority opinion is correct we have this

strange condition of affairs, viz.: A large number of officers whose compensation can not be increased or diminished during their terms, but the office can be abolished and the incumbent left without office or compensation. Surely the framers of the Constitution did not intend any such thing.

Our interpretation of section 161 is in harmony with the manifest intent of the provisions, while the attempt to extend its provisions to officers not named in the Constitution involves inconsistencies if not absurdities.

Section 107 of the Constitution provides "that the General Assembly may provide for the election or appointment for a term not exceeding four years of such other county or district, ministerial and executive officers as may, from time to time, be necessary."

Section 235 provides: "The salaries of public officers shall not be changed during the terms for which they were elected."

If the majority opinion is to be the rule of law, then all the subordinate officers appointed or created by virtue of section 107 come within the provision of section 161, and their compensation can not be changed during their terms, whether it be a fixed salary or fees or *per diem*. Such a construction is unreasonable and not in accord with business principles. Subordinate offices may for one year require about all the time of the incumbent, but the next year the duties might not require one-fourth of his time, and yet there could be no reduction of compensation under the majority opinion, and the only relief, if any, to the public would be the entire abolition of the office, although the incumbent might be glad to hold it at a reduced salary.

It is fair to assume that such, to some extent, was the case in regard to the appellees, especially Nevin and Wilson. The

legislature evidently had an idea that $2,500 per annum was probably fair compensation, hence required that they should have that much. The incumbents accepted the offices and could not have known that they would get more.

A short time afterwards the council reached the conclusion that the compensation should be $3,000 per annum, and the then mayor (Tyler) approved the ordinance. After the incumbents had been in office perhaps a year or more the council fixed the compensation at $2,500, and the ordinance was approved by the same Mayor Tyler. In our opinion each ordinance was and is valid because these officers are not embraced by section 161, but if they are embraced by the section *supra* then their compensation was fixed at $2,500 at the time they were appointed and qualified, and could not be raised to $3,000. The act provided that the compensation should not be less than $2,500, and the most that can be claimed is that the legislature authorized the council to raise their compensation, which it failed to do for a month or two after the qualification of the appellees, Nevin and Wilson.

Suppose the act of the assembly had provided that the salary should be $2,500, but the same might be increased by the council, would anyone contend that the salary had not been fixed? It seems to us that the provision made is substantially the same in fact and in law.

It seems clear to us that the business interests of the towns, cities and counties, as well as the genius of our institutions, demand that the compensation of all officers not mentioned in the Constitution should be at all times subject to the control of the legislative power that creates the offices and fixes the compensation. The taxpayers need protection as well as officers. The law-making power of the towns and cities are by the Constitution required to be elected bien-

nially, but according to the opinion of the majority of the
court they can not effect any reform or change in respect to
a large and very important matter of public policy only
once in four years.

We can not assent to any such doctrine. We think that
the ordinances complained of should be held to be valid.

---

*CASE 88—INDICTMENT—NOVEMBER 23, 1887.