State ex rel. v. Brown.

STATE *ex rel.* WEBB *v.* R. A. BROWN, County Judge *et al.*

(*Knoxville.*   September Term, 1915.)

1. **JUDGES.** *Compensation.* **Shall.**

Where relator was serving as judge of the juvenile court under Priv. Laws 1913, ch. 277, creating the juvenile court, and providing that the judge thereof should serve without compensation, he was entitled to the salary prescribed by the Act of 1915, since by that act the legislature performed its mandatory duty to provide a salary for such judge, under Const. art. 6, sec. 7, providing that judges "shall" receive a compensation, and did not increase the salary in violation of that section. (*Post, pp.* 687-690.)

Acts cited and construed:   Acts 1913, ch. 277.

Cases cited and approved:   The Judges' Salary Case, 110 Tenn., 370;  Webb v. Carter, 129 Tenn., 182;  Rucker v. Superior, 7 W. Va., 661;  Purcell v. Parks, 82 Ill., 346;  State v. McDowell, 19 Neb., 442;  Louisville v. Wilson, 99 Ky., 598.

Case cited and distinguished:   State ex rel. v. Burrow, 119 Tenn., 376.

Constitution cited and construed:   Const. art. 6, sec. 7.

2. **COUNTIES.**  *Juvenile court. Salary of judge.*  **Payment by county.**

The Act of 1915, providing a salary for the judge of the juvenile court of Knox county, does not violate the provision of Const. art. 2, sec. 29, that counties may be empowered to levy taxes for county purposes only, since the juvenile court is a county forum, serving a county purpose. (*Post, p.* 690.)

Constitution cited and construed:   Const. art. 2, sec. 29.

FROM KNOX.

Appeal from the Chancery Court of Knox County.—
W. D. WRIGHT, Chancellor.

JOHNSON & Cox, for appellant.

JNO. W. GREEN, HUGH M. TATE and MAYNARD & LEE,
for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the
Court.

This is a suit on relation of D. C. Webb, judge of
the juvenile court of Knox county, seeking to compel,
by mandamus, defendants Brown, the county judge,
and the county of Knox to pay to relator the salary for
the month of June, 1915, alleged to be payable to him,
as such officer, according to law. The case was heard
on bill of complaint and demurrer; the chancellor over-
ruling the demurrer of the defendants.

The juvenile court was created by Acts (Private)
1913, ch. 277, the relator having been appointed to
serve as the first occupant of the office of judge of that
court.

At the next general election, in August, 1914, he was
elected to that position by the qualified voters. At that
time there was no provision made by statute for his
compensation. On the contrary the act of 1913 pro-
vided that the judge of the juvenile court should serve
without compensation.

The general assembly at its 1915 session passed an
act which prescribed that a salary of $100 per month
be paid said judge, and it was to procure the payment
of that salary that the action was brought.

The grounds of the defendants' demurrer is indicated by what it said below.

The first contention of the appellants for a reversal is that, since at the date of appellee's election and qualification the provision of the law was that the judge of that court should serve without compensation, it was not within the power of the legislature to increase the compensation during the appellee's term of office, under the constitution.

The section of the constitution invoked by appellants (article 6, sec. 7) is as follows:

"The judges of the supreme or inferior courts, shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected. They shall not be allowed any fees or perquisites of office or hold any office of trust or profit under this State or the United States."

The words providing for compensation differ from those used in clauses in relation to the same subject-matter in the constitutions of some of the other States. The provision is not that the judges shall receive such compensation for their services as the legislature may determine, but that they shall receive a compensation, the subsidiary provisions being that the same should be by way of salary to be ascertained or fixed by the legislature. To make more certain the form that the compensation should take, it was provided that the same should not be from fees or perquisites.

The thought uppermost in the minds of the members of the constitutional convention was to set apart the judges and to give to them independence in the discharge of their high duties. They were not to be dependent on the will or whim of the politicians or the lawmaking power in respect of a reward by way of an increase, or of punishment by way of a diminution of their compensation during their tenure of office; they were not to be dependent on fees to be paid by a party litigant. Deprived of holding any other office of trust under the State or Nation, they were to be compensated for judicial service by those they serve—the people. "It is said by Mr. Story, quoting from the Federalist, that, next to permanency in office, nothing could contribute more to the independence of the judges than a fixed appropriation for their support." *The Judges' Salary Case,* 110 Tenn., 370, 389, 75 S. W., 1061, citing Story on the Constitution, sec. 1629.

It cannot be conceived that it was purposed by the language thus used to leave it within the power of the legislature to prescribe that the regular or tenure judges of the State should serve without compensation since in such case the natural tendency would be towards the result that only men of means could afford to occupy places on the bench.

Speaking of the expression of the sovereign will in the fundamental law, it was said in *State ex rel.* v. *Burrow,* 119 Tenn., 376, 104 S. W., 526, 14 Ann. Cas., 809:

"The provisions of these solemn instruments are not advisory, or mere suggestions of what would be

State ex rel. v. Brown.

fit and proper, but commands which must be obeyed. Presumably they are all mandatory. Certainly no provision will be construed otherwise, unless the intention that it shall be unmistakably and conclusively appears upon its face'' (citing Cooley, Const., Lim., 93).

Seldom, if ever, may the word ''shall,'' as here used, be treated otherwise than as evidencing a mandate. Cooley, Const. Lim., 93; *Webb* v. *Carter,* 129 Tenn., 182, 239, 165 S. W., 426.

If this be true, the legislature in the act creating the office of judge of the juvenile court should have complied with the mandate, and provided a compensation for the occupant of the office of judge; how much should be allowed was within its discretion, provided it was some amount. Failing in that duty, the legislature later performed it when the amendatory act was passed and a salary was thereby fixed. The compensation by way of salary was then created, not increased. There can be no increase of a quantity that has no existence.

The constitutional provision forbidding an increase or reduction of the compensation during the time for which Judge Webb was elected does not have application.

In Mechem, Public Officers, sec. 858, it is said:

''Where, however, the salary or compensation has not been fixed at all at the time of the election or appointment, this provision does not prevent its being fixed after the term begins.'' *Rucker* v. *Supervisor,* 7 W. Va., 661; *Purcell* v. *Parks,* 82 Ill., 346; *State* v.

*McDowell,* 19 Neb., 442, 27 N. W., 433; *Louisville* v. *Wilson,* 99 Ky., 598, 36 S. W., 944.

The remaining contention of the defendant is that the legislature exceeded its power when it prescribed in the amendatory act that the salary of the judge of the juvenile court should be paid by Knox county, the claim being that that official is a State officer, and can be paid for his services alone out of State funds, and that the contrary provision of the amendatory act violates article 2, sec. 29, of the constitution, which relates to the legislature empowering counties to levy taxes for county purposes only.

Without going here into a detailed analysis of the act, we hold that, though a court of record, the juvenile court so created is a county forum, and serves a county purpose. It provides for supervision of the homeless, dependent and delinquent children, the vagrants, beggars, waifs, truants, and incorrigibles of Knox county.

It has been held that the probate court of a county (Shelby), though a court of record, is a county court, created for well-recognized county purposes, the presiding judge of which may be paid for his services out of the county treasurer. *Judges' Salary Cases,* supra. For stronger reasons, the act here under review validly provided for the compensation of the complainant out of county funds.

Finding no error in the decree of the chancellor, it is affirmed.