## Louisville Bridge Commission v. Louisville Trust Company et al.

(Decided April 23, 1935.)

DAVID R. CASTLEMAN for appellant.

GORDON, LAURENT, OGDEN & GALPHIN for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Louisville Bridge Commission, an administrative agency of the city of Louisville, was created under the provisions of an act of the General Assembly of Kentucky, approved February 16, 1928. Acts 1928, c. 74, section 30371-1 et seq., Kentucky Statutes. The act authorized cities of the first class to construct, operate, and maintain interstate bridges across navigable streams and provided for the appointment of a commission to superintend the construction of such bridges and to control, operate, and maintain them after their construction.

By an act of the Federal Congress, approved February 25, 1928 (45 Stat. 146), the city of Louisville was authorized to construct and maintain a bridge across the Ohio river in accordance with the act of the General Assembly of 1928. Section 9 of the Act of 1928 (Ky. Stat. sec. 30371-9) provided for the issuance by the commission of revenue bonds of the city to provide funds to pay the cost of any bridge built pursuant to the provisions of the act, the principal and interest of such bonds to be paid solely from the tolls and revenues of the bridge. This section also provided that the commission might enter into an agreement with any trust company in the commonwealth as trustee for the holders of the bonds, the contract to set forth the duties of the city and the commission in respect to the construction, maintenance, and insurance of the bridge, the conservation and application of all funds, the insurance of moneys on hand or on deposit, and the rights and remedies of the trustee and the holders of the bonds.

On May 1, 1928, the commission entered into an agreement with the Louisville National Bank & Trust Company in which the Trust Company agreed to act as trustee for the bondholders. Article V, sec. 1, of the trust indenture contained this provision:

"The Commission covenants that immediately upon the receipt of the proceeds of the sale of any bonds secured hereby, it will cause such proceeds to be deposited in the name of the Commission in such bank or banks, trust company or companies, wherever located, subject to all the provisions of this Article, as the Commission and the Bankers may select in writing filed with the Trustee."

Section 2 of article V provides that:

"No moneys shall be deposited or remain on deposit with any bank or trust company unless there shall have been lodged with the Trustee and remain in full force and effect as security for the moneys deposited either (a) the indemnifying bond or bonds of a reliable surety company qualified to do business in the Commonwealth of Kentucky and also in the state in which such bank or trust company has its principal office, in a sum at least equal to the amount of moneys deposited with such bank or trust company, such bond or bonds to be approved in writing by the Commission and the Bankers as to terms, form, substance and sureties (the premium upon any such bond may be paid by the Commission in its discretion), or, if lawful, (b) marketable securities in an amount and of a kind approved in writing by the Commission and the Bankers."

Heretofore the bank in which the funds were deposited has furnished a bond with a corporate surety and the commission has paid the premium on the bond which amounts to approximately $1,500 annually. The commission desires to save this expense by permitting the depositary, the Louisville Trust Company, which succeeded the Louisville National Bank & Trust Company as trustee in May, 1929, to secure the deposits of the Bridge Commission by transferring them to its commercial department and by transferring specific and marketable securities to its trust department to secure the repayment of same, and this suit was brought under the Declaratory Judgment Act to have the rights of the parties declared.

Three questions have been raised:

(1) Are the funds received from the operation of the bridge public funds, and as such can their safekeeping be secured by the depositary by the pledge of specific collateral?

(2) Are state banks and trust companies authorized by law to become members of the Federal Reserve System and to subject themselves to the laws of Congress and the regulations of the Federal Reserve Board?

(3) May the Louisville Trust Company secure the

deposits of the Louisville Bridge Commission by transferring them to its commercial department and by transferring specific and readily marketable securities to its trust department to secure their repayment?

That the funds are public funds there can be little doubt. They are specific funds set apart for the payment of bonds issued by the city which, though not direct obligations of the city within the meaning of the constitutional inhibitions against indebtedness, yet are obligations of the city within the limitations prescribed by the enabling act of 1928 and the trust indenture. The fact that the funds have been pledged for a particular purpose does not alter their character of public funds. It was, in effect, so held in Klein v. City of Louisvillle, 224 Ky. 624, 6 S. W. (2d) 1104, where the validity of the enabling act of 1928 was upheld and particularly the provision therein which exempted the bonds from taxation. When the revenues from the bridge are deposited by the Bridge Commission with the trustee, they become trust funds pledged to the payment of certain specific obligations. Since the revenues of the bridge deposited with the trustee are public funds, the bank, acting as depositary may, pursuant to section 579 of the Kentucky Statutes, as amended by chapter 13 of the Acts of 1932, pledge such portions of its assets as may be required as collateral security for the deposit. The right of the depositary, which is a member of the Federal Reserve System, to pledge specific collateral to secure the deposit is also permitted by regulations which have been promulgated by the Federal Reserve Board for member banks. Those regulations provide that trust funds held by a member bank may be deposited in the commercial department or savings department of the bank to the credit of the trust department provided that the bank first delivers to the trust department, as collateral security, bonds, notes, or certificates of indebtednes of the United States or other readily marketable securities of certain defined classes. While the regulation in question speaks of national banks, it is clear that it was intended to apply to all member banks, especially when it is read in connection with that portion of the National Banking Act dealing with the rights and powers of state banks as members of the Federal Reserve System. U. S C. Title 12, sec. 330 (12 USCA sec. 330).

The query is raised as to whether Kentucky banks and trust companies may become members of the Federal Reserve System. Section 584 of the Kentucky Statutes, Carroll's 1915 Edition, prescribed the ratio of reserves and deposits of state banks and defined demand and savings deposits. In 1918 the General Assembly passed an act amending and re-enacting section 584 (Acts of 1918, c. 34). The amendment consisted of a paragraph inserted in the original act and provided that any bank or trust company which should become a member of the Federal Reserve System should be subject to all the provisions of the Federal Reserve Act (38 Stat. 251) and its amendments, and to the regulations of the Federal Reserve Board applicable to such bank or trust company, and should have all the powers and assume all the liabilities conferred and imposed by such act in regard to state member banks. In 1922 the General Assembly passed an act entitled "An Act amending and re-enacting Section 584, Kentucky Statutes (Carroll's 1915 Edition), relating to deposits in banks, amount to be kept on hand and defining time and demand deposits." Acts of 1922, c. 127. This act was passed pursuant to a resolution which had been adopted by the Kentucky Bankers Association in which it was pointed out that under the laws of Kentucky state banks were required to maintain larger reserves than National and Federal Reserve member banks. Section 584, as it was later amended and re-enacted by the act of 1922, omitted the paragraph which had been inserted by the act of 1918. The question is raised as to whether or not the act of 1922 repealed the act of 1918. We do not think so. The only purpose of the General Assembly in passing the act of 1922 was to make the reserve requirements of state banks conform to those of National and Federal Reserve member banks. There is nothing in the act which indicates that the General Assembly intended to repeal the amendatory part of the 1918 act. The existence of that act apparently was overlooked. There is no inconsistency between the acts and in the circumstances the doctrine of implied repeal should not be applied. Commonwealth v. Porter, 242 Ky. 561, 46 S. W. (2d) 1096. Grieb v. Jefferson County Fiscal Court, 249 Ky. 659, 61 S. W. (2d) 285, is not in conflict with this view, since in that case an act which omitted certain provisions from a prior act which was amended and re-enacted specifically referred to the amended act.

In the act of 1922 no reference is made to the act of 1918, and we conclude that there was no legislative intent to repeal that act.

Our conclusions, briefly summarized, are:

(1)   The bridge revenues deposited by the Louisville Bridge Commission with the Louisville Trust Company, trustee, are publc funds and as such their safe-keeping can be secured by the depositary by the pledge of specific collateral.

(2)   State banks and trust companies are authorized by law to become members of the Federal Reserve System and to subject themselves to all the provisions of the Federal Reserve Act (38 Stat. 251) and its amendments and to the regulations of the Federal Reserve Board applicable to state member banks.

(3)   The Louisville Trust Company, pursuant to the regulations of the Federal Reserve Board, has the right to secure the deposits of the Louisville Bridge Commission by transferring such deposits to its commercial department and by transferring specific and readily marketable securities to its trust department to secure the repayment of same.

The circuit court so held, and its judgment is affirmed.