**Herbert C. HOWARD, Appellant,**

v.

**E. A. SANSON, Appellee.**

Court of Appeals of Kentucky.

Dec. 13, 1963.

Rehearings Denied March 20, 1964.

S. J. Stallings, Louisville, for appellant.

Dougherty, Schilling & Gray, Louisville, for appellee.

CULLEN, Commissioner.

In proceedings brought under KRS 418.-005 (which authorizes judgment on motion by a client against his attorney for money collected or property received), E. A. Sanson was given judgment against Herbert C. Howard, an attorney, for $25,038.46. Also, under purported authority of KRS 30.190, judgment was entered suspending Howard from the practice of law for twelve months and until the judgment be paid. Howard has appealed from both judgments.

Sanson was in the construction business. Howard became his attorney in 1960 and after a short time took over the handling of all of Sanson's bookkeeping and accounting.

In 1961 Sanson obtained some contracts with the Middletown Water District, the total payments under which were in excess of $200,000. Howard was one of the commissioners of the water district, along with Joe T. Moore and R. J. Fanelli. After the first contract with the water district had been made, a corporation named Trinity Industries, Inc., was set up by Howard and Sanson. Thereafter, checks of the water district for payments under the contracts were first deposited in Sanson's bank account, and then checks were drawn on that account by Howard, some of the checks being payable to Howard personally and the others to Trinity Industries. The latter

checks were deposited in the Trinity Industries bank account. Howard drew some money personally from the Trinity Industries account and his secretary drew checks on that account payable to Moore and Fanelli. Over a period of several months Fanelli and Moore each received a little over $7,000, and Howard received around $11,000. The judgment in the instant action was for the recovery of those amounts.

The circuit court found in substance that there existed an arrangement among Sanson, Howard, Moore and Fanelli for the payment of "kickbacks" to the latter three as water commissioners and that the payments to the three men were for an illegal purpose. Without detailing the evidence of the various facets of the dealings among the four men we shall say that the evidence supports the finding. However, the circuit court also found that the scheme was the brainchild of Howard and for that reason, and because of Howard's superior education and his position as an attorney, he must be considered more culpable than Sanson, so as to render inapplicable the ordinary pari delicto rule under which the courts will not aid a wrongdoer to recover from a cotransgressor. With this finding we do not agree.

■ It may well be that Howard conceived the *details* of the scheme, but it appears that Sanson was a full participant in the evil *purpose*. While the circuit court said there was no showing that Sanson profited from the scheme, it seems obvious that he must have considered the obtaining and expediting of the contracts sufficiently advantageous to him to justify paying kickbacks. In our opinion the two men were in pari delicto, and their conduct involved such moral delinquency or turpitude as to compel the courts to refuse to entertain a proceeding by one against the other to determine their rights in the subject of their illegal transaction. See Munn v. Munn, Ky., 291 S.W.2d 560. The situation is simply that Sanson is trying to rescind an illegal deal that he knowingly entered into; it is not a matter of Howard's taking undue advantage of his fellow wrongdoer.

The cases relied upon by the appellee, such as Clark v. Millsap, 197 Cal. 765, 242 P. 918, and Lane v. Gugsell, 113 Ind. App. 676, 47 N.E.2d 835, are not comparable. In those cases a fraudulent transaction was made with the original purpose of benefitting the client only, and the attorney later used the transaction as a means of making a personal profit. In the instant case the transaction from the very outset was for the benefit of both Sanson and Howard.

It is our conclusion that the trial court should have denied relief to Sanson by application of the pari delicto rule.

■ In passing, we express the opinion that KRS 418.005 was not intended to apply to a situation such as here presented. It cannot reasonably be considered that the money which was paid to Moore and Fanelli, and the money Howard took for himself, under the kickback scheme in which Sanson was a participant, was "money collected" by an attorney for his client within the meaning of the statute.

The judgment suspending Howard from the practice of law must fall with the money judgment, because it was predicated upon the existence of an enforceable claim for money by Sanson against Howard. Furthermore, it is our opinion that the instant case does not come within the scope of KRS 30.190, which in terms applies only to the situation where an attorney "collects the money of his client, and * * * wrongfully neglects or refuses to pay it over * * *." Of course, the fact that the disciplinary measure provided for in KRS 30.190 is not available does not mean that other appropriate disciplinary procedures may not be invoked by the proper authorities.

The judgments are reversed with directions to dismiss the proceedings.