**COMMONWEALTH of Kentucky, Appellant,**

v.

**Herbert C. HOWARD, Appellee (two cases).**

Court of Appeals of Kentucky.

May 22, 1964.

Robert F. Matthews, Atty. Gen., Frankfort, Edwin A. Schroering, Jr., Commonwealth's Atty., Carl C. Ousley, Jr., 1st Ass't Commonwealth's Atty., Louisville, for appellant.

Samuel J. Stallings, Louisville, for appellee.

476

MONTGOMERY, Judge.

Two indictments, Nos. 125461 and 125462, were returned by the Jefferson County Grand Jury against Herbert C. Howard. Each indictment contained nine counts. Each involved the same transactions. In No. 125461, violations of KRS 61.190, receiving a profit on public funds, were charged. In No. 125462, violations of KRS 432.350(2), taking a bribe, were charged. Motions to dismiss the indictments were sustained, from which orders appeals have been taken. The appeals have been considered together because of the common questions involved.

Two questions are presented: (1) Was the appellee as commissioner of the Middletown Water District a public officer, and (2) were the sums of money received by him public funds?

■ At all times involved appellee was a commissioner of the Middletown Water District. The trial court held that appellee was not a public officer under KRS 61.-190 or an officer under KRS 432.350(2). Appellee relies on Board of Education of Graves County v. DeWeese, Ky., 343 S.W. 2d 598. Specifically the following language is relied on.

"The difficulties experienced in defining 'officers' are attributable to the court's determination to extend the term beyond the officers named in the constitution. The misgivings expressed in 1896 by Judge Guffy's dissenting opinion in City of Louisville v. Wilson, supra [99 Ky. 598, 36 S.W. 944], proved to be well-founded. The term became a creature of the court, not of the constitution itself, resulting in an era of ambiguity and evasion. In the circumstances, a re-examination and reconsideration of the subject are well within the legitimate scope of the judicial process, and we have concluded that the meaning of the word 'officers' as it is used in Const. §§ 161, 235 and 246 should be restricted to the officers

directly named and designated in the text of the constitution. To the extent that prior decisions of this court are inconsistent with this conception they shall no longer be authoritative."

\* \* \* \* \* \*

"From what we have said, it results that DeWeese is not an officer within the meaning of Const. §§ 161, 235 and 246, since the office of superintendent is a creature of statute (KRS 160.350) and is not named in the constitution."

The DeWeese case dealt with whether the compensation of a county school superintendent was limited by the named constitutional sections, each of which deals with salary limitations on various officers named in the Constitution. Specifically it was held that a county school superintendent was not a constitutional officer whose compensation was limited by Kentucky Constitution, Sections 161, 235, and 246. It did not hold that a county school superintendent was not a public officer. It is not authority for holding that a water district commissioner is not a public officer.

The Middletown Water District was created as a water commission pursuant to Kentucky Revised Statutes, Chapter 74. KRS 74.520 says: "Every water commission \* \* \* is declared to be a public body created and functioning in the interest and for the benefit of the public \* \* \*." Appellee was appointed as a member of such commission by the county judge.

In Taylor v. Commonwealth, 305 Ky. 75, 202 S.W.2d 992, the Court set forth five elements to be considered in determining whether a position in public employment constitutes a public office of a civil nature. They are as follows:

"(1) It must be created by the Constitution or by the Legislature or created by a municipality or other body through authority conferred by the Legislature; (2) it must possess a delegation of a portion of the sovereign

power of government, to be exercised for the benefit of the public; (3) the powers conferred, and the duties to be discharged, must be defined, directly or impliedly, by the Legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the Legislature, and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity, and not be only temporary or occasional."

This definition has been reaffirmed. Nichols v. Marks, 308 Ky. 863, 215 S.W.2d 1000; Love v. Duncan, Ky., 256 S.W.2d 498. In this respect these cases were not overruled by Board of Education of Graves County v. DeWeese for the reason previously indicated. A reading of Kentucky Revised Statutes, Chapter 74, entitled Water Districts, indicates that a water commissioner comes squarely within the five requirements listed as a public officer governed by KRS 61.190 and as an officer under KRS 432.350(2). See also 42 Am.Jur., Public Officers, Section 2, page 879; and Section 30, page 901.

■ The second ground for dismissal of the indictments was that public funds were not involved. In response to the orders sustaining appellee's motions, bills of particulars were filed, setting forth in great detail the transactions in which appellee was involved.

While appellee was serving as water commissioner, various funds were deposited with the Middletown Water District by the developers of various subdivisions, which funds were disbursed by the water district in payment for construction of water distribution and sewage systems in the subdivisions. These funds were deposited in the Construction Fund Account of the Middletown Water District at the Bank of Middletown, Middletown. Disbursements from this account were made to E. A. Sanson or Sanson & Sanson by checks drawn on the account and signed by appellee and by R. J. Fanelli or Joe T. Moore, also water commissioners. All of these checks, including one drawn on the Operations and Maintenance Fund of the district, were deposited in the bank account of Sanson, with the exception of one check which was deposited to the credit of Trinity Industries, Inc., a corporation set up by Howard and Sanson.

Appellee received nine payments by check totaling $8,075.81 from the accounts of Sanson and Trinity. Two checks were signed by Sanson, one by his secretary, and six by appellee, who was also authorized to draw checks on these accounts. In Howard v. Sanson, Ky., 375 S.W.2d 828, an action in which Sanson sued to recover these payments, the finding of the court was "that there existed an arrangement among Sanson, Howard, Moore and Fanelli for the payment of 'kickbacks' to the latter three as water commissioners and that the payments to the three men were for an illegal purpose."

Appellee contends that: (1) such funds were held by the water district as an escrow agent; and (2) assuming they were public funds, they became private funds when Sanson obtained possession.

In the agreements executed by Sanson and the water district with the respective developers, it was contemplated that the public improvements so constructed would become the property of the water district. It was expressly so provided in one contract. Under each contract the water district was charged with receiving the bids, making inspections to see that the specifications were followed, and with making the payments to the contractor, Sanson, upon satisfactory completion. In the event that any money remained after payment of the contractor, it was to be returned to the developer.

From this appellee argues that the funds were for the sole benefit of the contribu-

478

tors, thereby making the water district merely a custodian. It is evident from the nature of the contracts that the funds were not held for the sole benefit of the contributors. The water district was very much interested. By such means public improvements were obtained by it which it became obligated to operate and maintain and from which it would collect revenues for such purposes. In fact, one check was drawn on the Operations and Maintenance Fund.

These funds were under the complete control and supervision of the water district. The district was responsible for the proper disbursement of the funds after inspection and for returns of any surplus funds to the developer. Appellee and the other water commissioners, as public officers, were charged with this responsibility. This responsibility and the fact that the district is the beneficiary of the contracts distinguishes it from the position of a bank as an escrow agent. While these funds did come from a private source, the developers, they became public funds when paid over to the water district and it, in turn, became responsible for them and their proper disbursement. 42 Am.Jur., Public Funds, Section 2, page 718.

In principle there is no difference in this case and the payment of bridge tolls to retire revenue bonds. Such funds and the surplus remaining after retirement of the bonds have been held to be public funds. Louisville Bridge Commissioner v. Louisville Trust Company, 258 Ky. 846, 81 S.W. 2d 894; Dieruf v. Louisville & Jefferson County Board of Health, 304 Ky. 207, 200 S.W.2d 300. These funds were held by a public authority for a public purpose and to discharge an obligation made therefor. They are public funds.

 There is no merit in the contention that they became private funds when Sanson obtained possession thereof. Public funds do not lose their character as such when paid out for an illegal purpose. See Howard v. Sanson, Ky., 375 S.W.2d 828.

KRS 61.190 and 432.350(2) have for their purpose the protection of public monies and as such should be construed with that worthy purpose in mind. The purpose of the statutes should not be allowed to be defeated by device or stratagem. The bills of particulars in these cases and the opinion in the civil litigation, Howard v. Sanson, already mentioned, brand the transactions for what they are: "kickbacks" for an illegal purpose. In that case Howard and Sanson were held to be in pari delicto. The trial court was in error in dismissing the two indictments.

Judgments reversed.