[Civ. No. 18248. First Dist., Div. Two. Apr. 23, 1959.]

CLAUDE RAYMOND CURRIE, Appellant, v. LOUIS STOLOWITZ et al., Respondents.

Barrett & Harkleroad for Appellant.

Lee E. Solomon and Everett S. Layman for Respondents.

· KAUFMAN, P. J.—Plaintiff, C. R. Currie, an individual doing business under the firm name of Pacific Heating and Sheet Metal Company, appeals from a judgment in favor of

defendants, a copartnership, doing business under the firm name of Empire Electrical and Mechanical Company, entered after trial limited to the issue of whether plaintiff was a duly and regularly licensed contractor under the laws of the State of California.

In July 1950, plaintiff contracted with the Lodi Memorial Hospital Association, Inc., to furnish all material and labor, and to install all heating, ventilating, air conditioning and plumbing for the hospital for the sum of $233,784. Thereafter, plaintiff entered into a subcontract with the defendant who agreed to do all the plumbing work for the sum of $84,563. Defendant ceased performance under the subcontract in January 1951. Plaintiff completed the work and filed the statutory notice of completion on April 17, 1952. On September 20, 1955, plaintiff filed this action for damages in the sum of $67,810.34 for breach of contract. At the time of the trial, pursuant to section 597 of the Code of Civil Procedure, the issues were limited to: (1) whether plaintiff was properly licensed; and (2) whether plaintiff's claim was barred by the applicable statute of limitations.

At the conclusion of the trial on the first issue, the court found: that at all times plaintiff was licensed as a warm-air heating, ventilating and air conditioning contractor, the specialty license designated by the State Contractors License Board C-20; that during the progress of the contract, plaintiff in 1951 obtained additional specialty licenses C-43 (Sheet Metal Construction) and C-4 (Steam Heating); that at no time did the plaintiff hold a C-36 specialty license as a plumbing contractor, and that at all times the defendant was a licensed plumbing contractor with a C-36 specialty license. The court further found that the plumbing work subcontracted to the defendant was not incidental and supplemental to the heating, ventilating, and air conditioning work, and concluded that therefore the plaintiff was not a duly and regularly licensed contractor under the laws of the State of California, and could not succeed on his cause of action.

On appeal the plaintiff argues: (1) The trial court erred in its construction of "incidental and supplemental" as used in section 7059 of the Business and Professions Code when applied to a determination of whether plaintiff was barred by section 7031 of the Business and Professions Code. (2) The court erred in holding that section 7031 barred the instant action, as the contract with the Lodi Memorial Hospital Association was completed and paid for and not in issue. (3) The

court refused to consider testimony relating to industry custom and practice as well as defendant's letter of January 22, 1951. There is no merit in any of these arguments.

■ There is no question here that plaintiff was acting as a contractor within the definition of section 7026 of the Business and Professions Code. That section states: ". . . The term contractor includes subcontractor and specialty contractor." Section 7058 defines a specialty contractor as follows: "A specialty contractor is a contractor whose operations as such are the performance of construction work requiring special skill and whose principal contracting business involves the use of specialized building trades or crafts."

Section 7028 of the Business and Professions Code makes it unlawful for any contractor to engage in his business without a license. Section 7030 makes the violation of section 7028 a misdemeanor. Section 7031 provides: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract."

It is admitted that plaintiff did not at any time have the required C-36 license. Under the above statutes he was barred from bringing this action. It is clear that section 7031 bars a suit for breach of contract as well as for the collection of compensation for performance of any act. (*Harrison* v. *Butte Steel Bldgs., Inc.*, 150 Cal.App.2d 296 [310 P.2d 126]; *Lewis & Queen* v. *N. M. Ball Sons*, 48 Cal.2d 141 [308 P.2d 713]; *Moon* v. *Goldstein*, 69 Cal.App.2d Supp. 800 [158 P.2d 1004]; *Sheble* v. *Turner*, 46 Cal.App.2d 762 [117 P.2d 23]; also see *Owen* v. *Off*, 36 Cal.2d 751 [227 P.2d 457]; *Grant* v. *Weatherholt*, 123 Cal.App.2d 34 [266 P.2d 185]; *Mansfield* v. *Hyde*, 112 Cal.App.2d 133 [245 P.2d 577].)

■ Plaintiff next argues that the court erroneously interpreted section 7059. That section provides:

"The registrar, with the approval of the board, may adopt rules and regulations necessary to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage, as defined by Sections 7055, 7056, 7057, and 7058. A licensee

may make application for classification and be classified in more than one classification if the licensee meets the qualifications prescribed by the board for such additional classification or classifications. No additional application or license fee shall be charged for qualifying or classifying a licensee in additional classifications.

"Nothing contained in this section shall prohibit a specialty contractor from taking and executing a contract involving the use of two or more crafts or trades, if the performance of the work in the crafts or trades, other than in which he is licensed, *is incidental and supplemental to the performance of work in the craft for which the specialty contractor is licensed.*" (Emphasis added.)

The rules and regulations of the State Contractors License Board provide no person may engage in a field covered by a specialty license unless he has such a license or such work is incidental and supplemental to work performed pursuant to a license he does have. (Cal. Admin. Code, tit. 16, §§ 730 and 760.)

Plaintiff argues that the plumbing work (for which he did not have a specialty license) was only incidental and supplemental to the work performed under his C-20, C-4, and C-43 licenses for warm-air heating, ventilating, air conditioning, steam heating, and sheet metal construction, respectively. There is substantial evidence to support the trial court's finding, even from the testimony of defendant's own expert witness. An experienced examiner testified that the State Contractor's License Board has always construed "incidental" and "supplemental" to mean necessary to the main purpose. A similar conclusion was reached by the Attorney General. (3 Ops. Atty. Gen. 312.) It is a well settled rule of statutory construction that when the language of a statute is open to any doubt as to its proper interpretation, contemporaneous administrative construction is to be given great weight.

The existing cases also support this view. In *Kelly* v. *Hill*, 104 Cal.App.2d 61, at 65 [230 P.2d 864], the word "incidental" as used in Business and Professions Code, section 7049 was defined to mean: " 'Incidental' obviously means depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal, something incidental to the main purpose." Plaintiff relies on *Oddo* v. *Hedde*, 101 Cal. App.2d 375 [225 P.2d 929], and *E. A. Davis & Co.* v. *Richards*,

120 Cal.App.2d 237 [260 P.2d 805], neither of which are applicable here. In the Oddo case, the owner of a building brought an action to cancel two notes and deeds of trust which had been given to the defendant contractor in payment for the construction of the building, on the ground that the contractor did not have the required general building contractor's license. The evidence showed at the time of the contract, the contractor's license board had not completed its job of classification under section 7059. The contractor had made inquiries to the board and had been told by the board that he could undertake the work under the general engineering contractor's license which he held. The appellate court held that the contractor had substantially complied with the requirements of the statutes. There is no evidence of substantial compliance here. In the Davis case the contractor was exempt from the licensing requirement of Business and Professions Code, section 7045 because he installed prefabricated fixtures which did not become a permanent part of the structure.

Nor can the plaintiff here rely on the fact that the plumbing was to be done by the defendant who had the requisite specialty license. In *Hollywood Termite Control Co.* v. *Structural Pest Control Board*, 95 Cal.App.2d 56 [212 P.2d 278], the appellant contractor held a ''D'' license to engage in certain types of pest control work, but did not have an ''A'' or ''C'' license for the use of fumigants. Appellant entered into a contract for fumigation work and subcontracted this aspect of the work to the holders of ''A'' and ''C'' licenses. In a prosecution for violation of the Structural Pest Control Act, it was argued that because the work was in all cases actually performed by a licensed subcontractor, there was no violation of the act in merely contracting to do the work. To this the court replied at pages 58 and 59:

''It is the essence of the act that the public be protected against persons who are unqualified to perform the required work. It would violate the letter of the act to offer to do and to contract to do that which he was legally unqualified to do. It is the element of sub-contracting that the original contractor assume the primary responsibility, thereafter delegating that responsibility to a further contractor who is secondarily responsible. The pest control operator cannot delegate to another that which he is unqualified to do. For the foregoing reason it is unlawful for a pest control operator to contract to perform any fumigation work which he is not legally authorized to do,

and he cannot escape the effect of the statute by subcontracting the work to a duly licensed operator."

Plaintiff's argument against the trial court's interpretation of sections 7059 and 7031 is basically that it results in a harsh penalty and that it is inequitable to permit a party who has breached his contract to take shelter under the statutes. Plaintiff relies on *Matchett* v. *Gould*, 131 Cal.App.2d 821 [281 P.2d 524]. This case was recently overruled by *Lewis & Queen* v. *N. M. Ball Sons*, 48 Cal.2d 141 [308 P.2d 713], which also answers plaintiff's other arguments on this point. In the Lewis and Queen case the defendant contractor had subcontracted a portion of its work under a state highway construction contract to the plaintiff. When the defendant discovered that its subcontract with the plaintiff would violate its contract with the state, new agreements were made whereby the plaintiff ostensibly rented its equipment to the defendant for portions of the work. The plaintiff sued to recover on the rental agreements. The defendant cross-complained, alleging breach of contract. Neither party raised the issue of illegality. The plaintiff, a partnership, was not a licensed contractor, although one of the partners had an individual license. The trial court held that the facts showed that the plaintiff had agreed to act as a contractor within section 7026 of the Business and Professions Code and that it lacked a proper license. In affirming the judgment for the defendant, in answer to an argument like the one made by plaintiff here, the court said at pages 150 and 152:

"Since plaintiff did not comply with the statute, it cannot 'bring or maintain any action in any court of this State for the collection of compensation. . . .' (§ 7031; *Loving & Evans* v. *Blick*, 33 Cal.2d 603 [204 P.2d 23].) Plaintiff contends, nevertheless, that because defendant has been paid in full by the state for all work done on the parkway, justice requires that it be compelled to turn over to plaintiff the proceeds from the state contracts attributable to plaintiff's labor.

"One answer to this contention is that, even in the absence of a provision such as section 7031, the courts generally will not enforce an illegal bargain or lend their assistance to a party who seeks compensation for an illegal act. The reason for this refusal is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct. Know-

ing that they will receive no help from the courts and must trust completely to each other's good faith, the parties are less likely to enter an illegal arrangement in the first place. (Citations.)

"In some cases, on the other hand, the statute making the conduct illegal, in providing for a fine or administrative discipline excludes by implication the additional penalty involved in holding the illegal contract unenforceable; or effective deterrence is best realized by enforcing the plaintiff's claim rather than leaving the defendant in possession of the benefit; or the forfeiture resulting from unenforceability is disproportionately harsh considering the nature of the illegality. In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved. (Citations.) But we are not free to weigh these considerations in the present case. Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state. (Citation.) Moreover, even if we could take into account unjust enrichment of defendant, it is not at all clear that, had it reached the issue, the trial court would have found defendant indebted to plaintiff beyond what it had already paid."

Plaintiff further argues that this case is in the same category as *Norwood* v. *Judd,* 93 Cal.App.2d 276 [209 P.2d 24]. This argument too, was completely answered in *Lewis & Queen* v. *N. M. Ball Sons, supra,* as the court pointed out that *Norwood* v. *Judd* involved an action for dissolution and accounting between partners. There were, therefore, equitable considerations which are not present here, where the plaintiff is seeking protection from his own unlicensed activities. Furthermore, in the Norwood case, this court (Division One) said at page 283: "The principle that participants to an illegal contract who are *in pari delicto* can secure no relief based on such contract, is an ancient and most salutary one." To the same effect, is *Lala* v. *Maiorana,* 166 Cal.App.2d 724 [333 P.2d 862].

The record does not support plaintiff's argument relating to the trial court's exclusion of evidence concerning industry practice by the trial court. Such evidence was admitted over defendant's objections. Defendant's letter of January 22, 1951

was accepted in evidence and must be presumed to have been considered by the court.

We conclude the judgment finds ample support in the record before us.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.