[No. B094444. Second Dist., Div. Four. July 19, 1996.]

K & K SERVICES, INC., Plaintiff and Appellant, v.
CITY OF IRWINDALE, Defendant and Respondent.

**COUNSEL**

Carrick & Dale, Everett Hinchcliffe, George D. Dale and Jill A. Spitz for Plaintiff and Appellant.

Kamine, Steiner & Ungerer, Phyllis M. Ungerer and Maurya Hogan for Defendant and Respondent.

---

## OPINION

**EPSTEIN, Acting P. J.**—In this case, we consider whether an unlicensed contractor is barred by Business and Professions Code section 7031 from bringing an action against a landowner for breach of contract, where the contract does not call for payment of money by the landowner to the contractor, but gives the contractor the exclusive right to run a "fill" operation on the land, under which it will collect dumping fees from third parties. We conclude that the action is barred, and affirm the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

In May 1989, K West Engineering and Grading, Inc., a licensed contractor, made a proposal to the City of Irwindale (City) to fill the abandoned Manning Quarry. Under this proposal, K West would "[p]rovide, place and compact to 90% density clean earth and solid fill material (e.g. broken a.c. & concrete)." City was not required to pay K West for these services. Instead, "In consideration for K West's services and the substantial expenditures required for a project of this size, K West will be granted the absolute exclusive right to fill the property for a period of two years, commencing the date fill operations begin." K West was to have three successive two-year options with the same exclusive rights. The benefit to the City was that at the conclusion of the project, "a currently unusable pit would be transformed into a certified, compacted, street level, flat, usable piece of property for whatever future development the city may require, at virtually no cost to the City."

City accepted the proposal, which was formalized in a contract executed on July 9, 1990. The contract was not entered into by K West, but by K & K Services, Inc. (K & K), a corporation consisting of the same president and chief operating officer, Edwin Kalish, and the same vice-president, Donald R. Kalish, as K West. K & K did not have a contractor's license. The contract included an additional requirement that K & K pave a 300-foot road for incoming and outgoing hauling. K & K agreed to perform the described services "at no cost to the CITY of Irwindale." K & K was provided with "an exclusive, renewable two-year permit for the Manning Quarry to provide such services with three successive two-year options to K & K SERVICES. These are at the City's option and may be cancellable by the CITY only if

there is non-performance of this contract on the part of K & K SERVICES as determined by the CITY."

In 1991, City became concerned about the manner in which K & K placed the solid fill material in the first 15 to 20 feet of the fill. City was unable to verify that K & K was achieving the required 90 percent compaction. City asked its soils engineer to evaluate the fill and prepare specifications for the remaining 180 feet of fill. City's engineer prepared specifications which were reviewed by two other geotechnical firms. These experts concluded that if the fill were completed, the surface would have an increased risk of settlement due to voids and poor compaction in the first 20 feet of fill. For this reason, they would not guarantee or certify the fill as proposed. City demanded that K & K reprocess the fill. K & K refused to correct its work. At its June 11, 1992, meeting, the City Council voted to reject the specifications proposed by its soils engineer for filling the remainder of the quarry. K & K stopped work.

On January 14, 1993, K & K brought this action against City, seeking damages for breach of contract. K & K alleged that City breached the agreement by failing to adopt fill placement guidelines which would allow K & K to continue its fill operation, causing K & K to lose $19 million in profits over the life of the contract. City answered, and asserted several affirmative defenses. One of these was that K & K's action was barred by Business and Professions Code section 7031 (all statutory references are to this code unless otherwise stated), which precludes an unlicensed contractor from bringing an action to recover compensation for contracting services. City also filed a cross-complaint for breach of contract, alleging that K & K failed to place and compact the fill properly.

City moved for summary adjudication on its affirmative defense based on K & K's lack of a license. In opposition, K & K admitted that it was unlicensed, but claimed that no contractor's license was required because the contract was a development agreement, and that section 7031 was inapplicable because K & K was not seeking "compensation for the performance of any act or contract for which a license is required . . . ." The court granted City's motion and the parties stipulated to dismiss City's cross-complaint without prejudice. Judgment was entered in favor of City and K & K appeals.

## DISCUSSION

## I

### *"Compensation"*

Section 7031, subdivision (a) provides: "Except as provided in subdivision (d), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, . . ."

■ Appellant claims the court erred in concluding that its complaint constituted an action for compensation within the meaning of section 7031. Appellant argues that its action against City was not for "compensation" from City for performance of the contract, but for reimbursement for lost profits from third parties resulting from City's breach of the contract.

It is settled that "section 7031 bars a suit for breach of contract as well as for the collection of compensation for performance of any act." (*Currie* v. *Stolowitz* (1959) 169 Cal.App.2d 810, 813 [338 P.2d 208].) "Properly construed, the term [compensation] embraces damages suffered by a contractor lacking the requisite license under the law for breach of a contractual obligation where either (1) the making of the contract or (2) the performance during which the breach occurs comes within the licensing requirement." (*General Ins. Co. of America* v. *St. Paul Fire & Marine Ins. Co.* (1974) 38 Cal.App.3d 760, 762, fn. 1 [113 Cal.Rptr. 613].)

The Supreme Court addressed the scope of section 7031 in *Hydrotech Systems, Ltd.* v. *Oasis Waterpark* (1991) 52 Cal.3d 988, 997 [277 Cal.Rptr. 517, 803 P.2d 370]: "Regardless of the equities, section 7031 bars all actions, however they are characterized, which effectively seek 'compensation' for illegal unlicensed contract work. [Citation.] Thus, an unlicensed contractor cannot recover either for the agreed contract price or for the reasonable value of labor and materials."

In our case, appellant agreed to perform specific work—processing, grading, compacting fill, and paving—for the benefit of City, in exchange for which City agreed to provide appellant with an exclusive renewable permit for fill rights for the quarry. The fill rights were plainly the "compensation"

or "agreed contract price" for appellant's work. (*Hydrotech Systems, Ltd.* v. *Oasis Waterpark, supra,* 52 Cal.3d at p. 997; see also *Johnson* v. *Mattox* (1968) 257 Cal.App.2d 714, 718 [65 Cal.Rptr. 185] [" 'Compensation' should be read in its usual and ordinary sense, which imports payment or reward in any form."].) It is the loss of these rights that is the basis of appellant's action, since appellant turned the fill rights into cash by charging third parties for dumping dirt, concrete and asphalt into the quarry.

The fact that appellant's compensation under the contract with City was a permit to fill a quarry rather than cash does not take this breach of contract action outside the bar of section 7031. Appellant's measure of damages for City's breach was the amount of profits appellant would have received from its use of the fill rights in the absence of a breach. The fill rights plainly had value to appellant, albeit calculated by its collection of fees from third parties, and can properly be deemed "compensation" within the meaning of section 7031.

Appellant relies on *McCarroll* v. *L.A. County etc. Carpenters* (1957) 49 Cal.2d 45 [315 P.2d 322], for the principle that not every action by an unlicensed contractor is an action for compensation. That is a true statement, but it does not apply to our case. The unlicensed plaintiffs in *McCarroll* sued to enforce a collective bargaining agreement. The court found the bar of section 7031 inapplicable to their action, since their labor contract was not prohibited by the contractor's licensing statutes. (49 Cal.2d at p. 69.) As we next discuss, the contract appellant claims was breached in our case involved performance of duties for which appellant was required to hold a contractor's license.

Also distinguishable is *Davis Co.* v. *Superior Court* (1969) 1 Cal.App.3d 156 [81 Cal.Rptr. 453], in which an unlicensed contractor was permitted to maintain an action for breach of warranty against a materialman. That action was not barred by section 7031 because it arose out of a transaction between the unlicensed contractor as a purchaser, and the materialman as a seller; it did not involve a transaction contemplated by the licensing requirements imposed upon contractors. (1 Cal.App.3d at p. 159.)

II

*Need for Contractor's License*

■ Appellant attempts to avoid application of section 7031 by characterizing its contract with City as a development agreement rather than a contract for which a contractor's license is required. We find no support for this characterization.

Section 7026 defines the term "contractor" as "any person, who undertakes to or offers to undertake to or purports to have the capacity to undertake or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, . . ." Appellant's contract with City required appellant to provide, place and compact an average of 825,000 cubic yards per year of solid fill material in the Manning Quarry; to supervise and control the project at all times; to strip and stockpile all existing organic matter; and to pave a haul road approximately 300 feet in length. These contractual duties come within the definition of "contractor" and hence require a contractor's license.

## III

### Statutory Exemptions

Appellant claims that section 7040 exempts this contract from the provisions of section 7031. At the time the contract was made, section 7040 provided: "This chapter [Chapter 9, which constitutes the Contractors' State License Law, § 7000 et seq.] does not apply to an authorized representative of the United States government, the State of California, or any incorporated town, city, county, irrigation district, reclamation district or other municipal or political corporation or subdivision of this state. [¶] (b) Nothing in this section authorizes the state or an authorized representative thereof either to enter into or authorize a contract with an unlicensed contractor for work which is required by this chapter to be performed by a licensed contractor."

Appellant interprets section 7040 to exempt contracts between public entities and unlicensed contractors from the requirements of the Contractors' State License Law, including the bar of section 7031. This interpretation is inconsistent with the basic rule of statutory construction that ". . . the various parts of a statutory enactment must be harmonized by considering the particular section in the context of the statutory framework as a whole." (*Khan* v. *Medical Board* (1993) 12 Cal.App.4th 1834, 1844 [16 Cal.Rptr.2d 385].)

Section 7028 provided: "It is a misdemeanor for any person[1] to engage in the business or act in the capacity of a contractor within this state without having a license therefor, unless such *person* is particularly exempted from the provisions of this chapter." (§ 7028, subd. (a), italics added.)

---

[1]Section 7025 defines "person" to include "an individual, a firm, copartnership, corporation, association or other organization, or any combination of any thereof."

Section 7040 is one of the particular exemptions to section 7028. Its application is to the *person* who would otherwise be required to be licensed under section 7028, not to a transaction. Section 7040 exempts "an authorized representative" of a public entity from being licensed; it does not apply to contracts between the public entity and an unlicensed contractor, as appellant urges.

Appellant's interpretation cannot be reconciled with the express statutory requirements of section 7028.15. That section provides in part: "(a) It is a misdemeanor for any person to submit a bid to a public agency in order to engage in the business or act in the capacity of a contractor within this state without having a license therefor, except in any of the following cases: [¶] (1) The *person* is particularly exempted from this chapter." (Italics added.) Section 7028.15, subdivision (a) would be meaningless if all such contracts were exempt under section 7040. "[S]tatutes should be interpreted in such a way as to make them consistent with each other, rather than obviate one another." (*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328].) Obedient to that mandate, we reject appellant's interpretation.

Appellant presents lengthy arguments regarding the 1990 amendment to section 7028.15, subdivision (e) (Stats. 1990, ch. 321, § 1 [Sen. Bill No. 929]), which declares void contracts or purchase orders issued by a public agency to an unlicensed contractor. Appellant claims that if section 7031 applies to contracts between unlicensed contractors and public entities and renders those contracts void, the amendment to section 7028.15 declaring such contracts to be void was mere surplusage. The problem with this argument is that the effect of section 7031 is not to render the contract with the unlicensed contractor void, but simply to bar the unlicensed contractor from bringing an action for compensation based on the contract.

We find no support for appellant's argument that the Legislature intended that all contracts with governments be governed by the Public Contract Code rather than by the Contractor's Licensing Law. That code is intended to clarify competitive bidding requirements, to ensure compliance with those requirements, to provide a fair opportunity for all qualified bidders to enter the bidding process, and to eliminate favoritism, fraud and corruption in the awarding of public contracts. (Pub. Contract Code, § 100.) There is no basis to conclude that it preempts application of the Contractor's Licensing Law to contracts with public entities, particularly since the Contractor's Licensing Law contains provisions which are expressly applicable to public entities.

Appellant claims the contract is not subject to section 7031 because section 7048 exempts contracts such as this one where the aggregate contract

price is less than $300. As we have explained, the contract price in this case was in the form of fill rights to the quarry. Appellant valued the loss of these rights at $19 million. This contract does not fall within the exemption of section 7048.

## IV

### *Estoppel*

██ Finally, appellant claims City is estopped from asserting application of section 7031. According to appellant, before deciding that it, rather than K West, would execute the contract, appellant asked city engineer Carlos Alvarado whether the contract would require a licensed contractor. Mr. Alvarado informed appellant that he did not believe that it did. Appellant claims City, through the statement of its authorized agent, intentionally and deliberately led it to believe no license was required and to act upon that belief, and hence should be precluded from contradicting that statement in this action.

"A person who asserts an estoppel must prove (1) a representation or concealment of material facts (2) made with knowledge, actual or virtual, of the true facts (3) to a party ignorant, actually and permissibly, of the truth (4) with the intention, actual or virtual, that the latter act upon it and (5) that the party actually was induced to act upon it." (*Walsh* v. *Board of Administration* (1992) 4 Cal.App.4th 682, 709 [6 Cal.Rptr.2d 118].) Appellant's argument falters on the third element. Unlicensed contractors are held to knowledge of the requirements of the licensing law. (*Hydrotech Systems, Ltd.* v. *Oasis Waterpark, supra*, 52 Cal.3d at p. 999.) City is not estopped to assert section 7031 as a defense.

### DISPOSITION

The judgment is affirmed.

Baron, J., and Aranda, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied October 2, 1996.

---

*Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.