514 P.2d 454

**CITY OF PHOENIX, a political subdivision of the State of Arizona, City of Mesa, a political subdivision of the State of Arizona, and Zurn Engineers, a corporation, Petitioners,**

v.

**The SUPERIOR COURT of the State of Arizona IN AND FOR the COUNTY OF MARICOPA and Morris Rozar, judge thereof, and M. M. Sundt Construction Co., an Arizona corporation, Respondents.**

No. 11094.

Supreme Court of Arizona,
In Banc.

Sept. 20, 1973.

**534**

Joe R. Purcell, Phoenix City Atty. by Patrick E. Burke, Asst. City Atty., Phoenix, for petitioners City of Phoenix and City of Mesa.

Monteleone & McCrory by Darrell P. McCrory, Los Angeles, Cal., Herbert Mallamo, Phoenix, for petitioner Zurn Engineers.

Lewis & Roca by John P. Frank and Mary M. Schroeder, Phoenix, Robertson, Molloy, Fickett & Jones by John F. Molloy, Tucson, for respondent M. M. Sundt Const. Co.

Mariscal, Weeks, Lehman & Whitten by Phillip Weeks, Phoenix, for amicus curiae Wittman Contracting Co.

HOLOHAN, Justice.

Petitioners City of Phoenix and Zurn Engineers brought this Special Action to prevent the enforcement of the decision of the superior court which ordered the award of a certain construction contract by the City to Zurn Engineers set aside. Due to the public importance of the questions presented we accepted jurisdiction, denied the request of the petitioners to set aside the order of the trial court, approved the findings of the superior court, and noted that a written decision would follow in due course.

The facts of the case are that the City of Phoenix advertised for bids for the construction of the Val Vista Water Treatment Plant to supply domestic water for the Cities of Phoenix and Mesa. The construction, supervision, operation and maintenance of the plant are to be within the exclusive control of the City of Phoenix, but the cost is to be borne in a percentage of 80% by the City of Phoenix and 20% by the City of Mesa. Petitioner, Zurn Engineers, submitted the lowest bid, with respondent, M. M. Sundt Construction Co. having the next lowest bid. Sundt protested the bid of Zurn Engineers, but the City of Phoenix accepted the Zurn bid. Sundt brought suit in the Superior Court of Maricopa County to restrain the City from allowing Zurn to proceed with the construction contract. Sundt also sought in the action to compel the City to award the bid to it as the lowest bidder under Arizona statutes.

Various grounds were offered by Sundt for invalidating the Zurn bid, but we need only consider those relied on by the superior court for its decision, namely, that Sundt was the lowest responsible bidder because A.R.S. § 34–241 allows a 5% preference in this case to Sundt, and that Zurn did not have the proper contracting license to construct the project.

A.R.S. § 34–241, subsec. B reads:

"B. In awarding the contract for work to be paid for from public funds, bids of contractors who have satisfactorily performed prior public contracts, and who have paid state and county taxes within the state for not less than two successive years immediately prior to submitting a bid on a plant and equipment such as is ordinarily required for performance of the contract for which

the bid is submitted, or on other real or personal property in the state equivalent in value to such plant, shall be deemed a better bid than the bid of a competing contractor who has not paid such taxes, whenever the bid of the competing contractor is less than five per cent lower, and the contractor making a bid, as provided by this section, which is deemed the better bid, shall be awarded the contract."

■ Petitioners do not contend that Sundt does not qualify for the preference, nor do they claim that Zurn Engineers does qualify. Their contention is that the 5% preference is not applicable to the construction contract at issue because the statute granting the preference is unconstitutional as violating the equal protection provisions (Amendment XIV) and the commerce clause (Article I, Section 8) of the U. S. Constitution, and the contract in question does not involve the expenditure of public funds.

The "5% preference" statute was held constitutional by this Court in Schrey v. Allison Steel Mfg. Co., 75 Ariz. 282, 255 P.2d 604 (1953). The Court held that there was a reasonable basis for the privilege granted, and the statute provided a classification which allowed not only a domestic contractor but also a foreign one to qualify. We continue to follow the holding in *Schrey*.

The constitutionality of a somewhat similar type of statute has been upheld in American Yearbook Company v. Askew, 339 F.Supp. 719, affirmed 409 U.S. 904, 93 S.Ct. 230, 34 L.Ed.2d 168 (1972) in which the U. S. Supreme Court affirmed the decision of a three-judge federal court which upheld the constitutionality of a Florida statute requiring all public printing of the state to be done in the state. The *Askew* decision upholds the authority of the state and its subdivisions to prescribe the conditions under which work of a public character will be done. The *Askew* decision supports our holding in *Schrey*.

Petitioners urge that "public funds" are not to be utilized in the present case because the project is to be financed by revenue bonds issued pursuant to A.R.S. § 9-521 et seq., and such bonds are not a general obligation of the City. A.R.S. § 9-536. Petitioners argue that a revenue bond financing plan cannot be considered as part of public funds because the proceeds from the sale of revenue bonds are in effect held in trust by the City for the specific project; therefore they are not owned by the City.

As authority for their position petitioners have cited Cyr & Evans Contracting Co. v. Graham, 2 Ariz.App. 196, 407 P.2d. 385 (1966), in which the Court of Appeals held that a street paving contract financed through assessments and bonds pursuant to A.R.S. § 9-671 et seq. was not one utilizing "public funds" because the funds do not equitably belong to the city but are trust funds for the payment of the improvements.

It must be noted that in *Cyr* the improvements did not involve the total city but a district which might have had few property owners. In this sense the funds would not be used for the public but for the benefit of a few property owners of a given improvement district of the city.

We need express no opinion as to the holding in *Cyr* except to say that it is clearly distinguishable from the present case.

The funds in this case are held and to be expended for the benefit of the entire population of the City. Even if we accept the City's contention that the money is held in trust for the project, it is obvious that the project is for the benefit of the public.

Since Board of Regents v. Sullivan, 45 Ariz. 245, 42 P.2d 619 (1935) this Court has held that revenue bonds are not subject to the debt limitation of Section 5, Article IX of the Arizona Constitution, A.R.S., but the fact that such bond funds are not subject to the debt limitation does not

mean that the funds are not public. To the contrary, in Humphrey v. City of Phoenix, 55 Ariz. 374, 102 P.2d 82 (1940), this Court held that the funds from revenue bonds must be expended for a public purpose.

There is, of course, no question but that the bond funds in this case are for a public purpose—the construction of a water treatment plant for the production of potable water for the residents of the two cities. The funds to pay for this project are held by the City of Phoenix to discharge the payment of a clearly public purpose, and the fact that these funds are pledged for a particular purpose does not alter their character as public funds. Louisville Bridge Commission v. Louisville Trust Co., 258 Ky. 846, 81 S.W.2d 894 (1935); Commonwealth v. Howard, Ky., 379 S.W.2d 475 (1964); 63 Am.Jur.2d 394, Public Funds, § 1.

■ We hold that expenditure of funds for the construction of the project in this case are public funds for which the preference provided in A.R.S. § 34–241, subsec. B is applicable. Respondent Sundt being entitled to the preference thereby becomes the low bidder and entitled to be awarded the contract.

The trial court ruled that Zurn Engineers did not qualify to construct the project because it lacked the proper license from the Registrar of Contractors. Under A.R.S. § 34–241, subsec. A a bidder on public works must be a duly licensed contractor in this state or his bid cannot be considered. Zurn Engineers holds a Class A General Engineering contractor's license. Respondent Sundt contended before the trial court that an A license was not sufficient to construct the project, and it was necessary that the contractor have both a Class A and Class B General Building, Heavy Construction license.

The statute defining the two types of contractors is A.R.S. § 32–1102, subsecs. 1 and 2. The principal distinction between the types of contractors is that the general building contractor builds structures for the support, shelter and enclosure of persons, animals, and chattels, and the general engineering contractor builds fixed works requiring specialized engineering knowledge and skill. At first blush it would appear that a water treatment plant would fall within the general engineering category requiring a Class A license, but the evidence discloses that there is an administration building to be constructed as part of the project which is a multipurpose building. The building will have not only water treatment tanks but also offices, conference room, laboratory, shop area, and lunch room. It is clear that the building will shelter and enclose persons and chattels. The building will cost in excess of one million dollars, and some 25% of the structure is devoted to the administration function of the treatment plant.

■ The Registrar of Contractors is charged with the duty of adopting rules and regulations classifying contractors and limiting their field and scope of operation. A.R.S. § 32–1105, subsec. A. In this case two experts from the office of the Registrar testified that both a Class A and Class B license would be required before a contractor could undertake construction of the water treatment project. Courts give great weight to the opinions of those charged with the duty of administering the regulation of a pursuit involving technical expertise. Arnold Construction Company, Inc. v. Arizona Board of Regents, 109 Ariz. 495, 512 P.2d 1229 (1973). The trial judge ruled that two licenses were required to construct the project, and, since Zurn did not have a Class B license, he was not qualified to perform the contract. A.R.S. § 34–241, subsec. A.

■ This Court will not disturb the findings of the trial court when supported by substantial evidence. Cantlay & Tanzola, Inc. v. Senner, 92 Ariz. 63, 373 P.2d 370 (1962). We are, of course, not bound

by the legal conclusions. Combustion Engineering, Inc. v. Arizona State Tax Commission, 91 Ariz. 253, 371 P.2d 879 (1962).

Petitioners argue that a contractor holding a Class A license is not limited to construction of "fixed works," citing Oddo v. Hedde, 101 Cal.App.2d 375, 225 P.2d 929 (1951). Since we took our statutes governing contractors from California, such a decision is persuasive. Respondents point out that the *Oddo* case has been distinguished and may be limited to its particular facts. See Currie v. Stolowitz, 169 Cal.App.2d 810, 338 P.2d 208 (1959).

The purpose of the licensing statute is to provide protection for the public that contractors have the requisite skill and ability to perform the required work. Arnold Construction Company, Inc. v. Arizona Board of Regents, *supra;* Northen v. Elledge, 72 Ariz. 166, 232 P.2d 111 (1951); Miller v. Superior Court, 8 Ariz.App. 420, 446 P.2d 699 (1968). The statute, A.R.S. § 32–1102, makes a distinction between the two major types of contractors, and we believe that it is an important one, especially since the general building contractor is involved with structures which shelter and enclose humans. The Registrar of Contractors, by requiring two types of license to accomplish this project, recognizes the need for the contractor meeting both the standards for fixed structures and for enclosures for shelter of persons. The trial court accepted this position, and we agree that the position of the trial court and the Registrar appear to be more in harmony with the legislative intent to protect the public in this area. We hold that both a Class A and B license are required for construction of the water treatment project.

The relief sought by petitioners in this Special Action is denied.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.