557 P.2d 526

**MARDIAN CONSTRUCTION COMPANY, an Arizona Corporation, Petitioner,**

**v.**

**The SUPERIOR COURT of Arizona, and the Honorable D. L. Greer, a Judge thereof, the City of Phoenix, a Municipal Corporation of the State of Arizona, Marvin A. Andrews, Acting City Manager, and M. M. Sundt Construction Co., an Arizona Corporation, Respondents.**

No. 12897.

Supreme Court of Arizona, In Banc.

Dec. 8, 1976.

**490**

Snell & Wilmer, by Warren E. Platt, Daniel J. McAuliffe, Donald D. Colburn, Phoenix, for petitioner.

Robertson, Malloy, Fickett & Jones, by John F. Malloy, Tucson, for respondent M. M. Sundt Const. Co.

Andrew Baumert, Phoenix City Atty., by Jess W. Sears, Phoenix, for respondents City of Phoenix and Marvin A. Andrews.

Divelbiss, Gage & Cheney, by Carl W. Divelbiss, Phoenix, for amicus curiae T. G. K. Constr. Co., Inc.

Daughton, Feinstein & Wilson, by Allen L. Feinstein, Phoenix, for amicus curiae Corbin-Dykes Elec. Co.

Ryley, Carlock & Ralston, by Raymond M. Hunter, Phoenix, for amicus curiae C. J. Hassett Corp.

Cox & Cox, by L. J. Cox, Jr., Phoenix, for amicus curiae S.M.P. Mechanical Contractors, Inc.

Moore & Romley, by Elias M. Romley, Phoenix, for amicus curiae Chanen Constr. Co., Inc.

Jennings, Strouss & Salmon, by Clarence J. Duncan, Phoenix, for amici curiae Dorsey Const. Co., J. R. Porter Constr. Co. and E. F. Hargett and Co.

Carson, Messinger, Elliott, Laughlin & Ragan, by C. A. Carson III, Phoenix, for amicus curiae Kitchell Contractors, Inc.

STRUCKMEYER, Vice Chief Justice.

This special action arises out of the award of a contract for the construction of a passenger terminal, an automobile parking garage, and related facilities at Sky Harbor International Airport in Phoenix to the M. M. Sundt Construction Company. Jurisdiction was accepted pursuant to Art. 6, § 5 of the Arizona Constitution. On the ninth day of November, 1976, this Court issued its order directing that the construction contract be awarded to the Mardian Construction Company with a written opinion to follow.

The facts necessary for this decision are as follows. A Call for Bids for construction of the project known as "Terminal Module Three" was issued by the City Engineer of Phoenix in March, 1976. Bid proposals were to be submitted by September 9, 1976. At that time the lowest bid submitted was that of petitioner, Mardian Construction Company, an Arizona corporation, in the amount of $39,650,000.00. The second low bid, in the amount of $39,858,000.00, was submitted by the respondent, M. M. Sundt Construction Company, also an Arizona corporation. Although the bid submitted by Mardian was $208,000.00 lower than that submitted by Sundt, the latter filed a protest with the City of Phoenix urging that it was entitled to a five percent preference under A.R.S. § 34-241(B) and that Mardian was not.

A.R.S. § 34-241(B) provides:

"B. In awarding the contract for work to be paid for from public funds, bids of contractors who have satisfactorily performed prior public contracts, and who have paid state and county taxes within the state for not less than two successive years immediately prior to submitting a bid on a plant and equipment such as is ordinarily required for

performance of the contract for which the bid is submitted, or on other real or personal property in the state equivalent in value to such plant, shall be deemed a better bid than the bid of a competing contractor who has not paid such taxes, whenever the bid of the competing contractor is less than five per cent lower, and the contractor making a bid, as provided by this section, which is deemed the better bid, shall be awarded the contract."

On September 29, 1976, a hearing on Sundt's protest was commenced before an assistant city attorney. At the conclusion of the hearing on October 4, the assistant city attorney issued an opinion to the Acting City Manager, in which he found that both contractors were "duly licensed and qualified to act as the general contractor" on the project, that both had "satisfactorily performed prior public contracts", but that only Sundt was entitled to a bid preference under the statute. Thereafter, the Phoenix City Council voted to award the contract to Sundt. On October 13, a special action was filed in the Superior Court of Maricopa County and heard on October 19 through October 26. The present petition was filed the day following the entry of a judgment in the Superior Court favorable to Sundt.

As a preliminary to our conclusions it may be stated that the constitutionality of the statute A.R.S. § 34–241 has twice been considered by this Court, the first time in 1953 in *Schrey v. Allison Steel Mfg. Co.*, 75 Ariz. 282, 255 P.2d 604, in which we said:

"Appellants contend that everyone must be allowed to enter into these contracts on the same basis; that a distinction based upon the differences between a taxpaying and non-taxpaying bidder for these public contracts exceeds legislative power. With this we cannot agree. * * *

The legislature has the right to regulate the letting of contracts for public works to be constructed by the state or its political subdivisions." 75 Ariz. at 286-87, 255 P.2d at 607.

and held:

"[T]he state, in contracting for the expenditure of tax money, had a reasonable basis for granting a five per cent preference to contractors who, through the payment of taxes for two years, have made a contribution to the funds from which they are to reap a benefit." 75 Ariz. at 287, 255 P.2d at 607.

We note also the question presently raised on respondent's motion for rehearing as to whether the statute conflicts with Art. 9, § 7 of the Arizona Constitution was answered in *Schrey*. It was held that the statute did not confer a donation or a grant to a corporation contrary to the Constitution.

Twenty years later, in *City of Phoenix v. Superior Court*, 109 Ariz. 533, 514 P.2d 454 (1973), we again passed upon the constitutionality of § 34–241(B). As against the contention that the statute violated the equal protection provisions (Amendment Fourteen) and the Commerce Clause (Art. 1, § 8) of the United States Constitution, we said: "We continue to follow the holding in *Schrey*."

Section 34–241(B), enacted in 1933 by the Eleventh Legislature of the State, was introduced originally as part of House Bill 37. It became part of Chapter 12 of the Session Laws of 1933. House Bill 37, as introduced, amended certain sections of the Revised Code of 1928 and added certain new sections. The title of the Act before later amendments as it relates to the problem here then provided:

" * * * THAT RESIDENT CONTRACTORS PAYING TAXES ON A PLANT WITHIN THE STATE, OR THE EQUIVALENT THEREOF, FOR TWO YEARS IMMEDIATELY PRIOR TO THE AWARDING OF THE CONTRACT SHALL BE GIVEN THE PREFERENCE IN AWARDING THE CONTRACT TO THE EXTENT OF TEN PERCENT; * * *."

The original emergency clause was in this language:

"Section 9. WHEREAS, many residents of the state of Arizona are without employment and many contractors and producers and dealers within the state of Arizona are without work, or without a market for their products, and non-resident contractors bring into the state non-resident employees to remain and become a burden on the public after their contracts are completed, and many resident contractors, producers and dealers are unable to pay their taxes, and the provisions of this act will tend to relieve such unemployment, to prevent the increase of the unemployed, and to aid in the collection of taxes, the immediate operation of this act is required to preserve the public peace, health and safety, and said act is hereby declared an emergency measure and shall take effect immediately upon its passage in the manner provided by law." See House Bills, 1933, Part 1, House of Representatives, State Library and Archives.

The title of the Act as finally adopted provided:

"AN ACT

AMENDING SECS. 1350 to 1353, BOTH INCLUSIVE, OF THE REVISED CODE OF 1928, * * * THE ADDITION OF FIVE NEW SECTIONS RELATING TO QUALIFICATIONS OF EMPLOYEES, AND PROHIBITING EMPLOYMENT OF NONRESIDENTS TO QUALIFICATIONS OF CONTRACTORS, *AND GIVING PREFERENCE TO RESIDENT TAX PAYING CONTRACTORS,* * * *."
Legislature of 1933, Regular Session, Ch. 12 (Emphasis added).

From the foregoing it is clear that the preference given by the statute to contractors who paid state and county taxes was intended to give an advantage to residents over nonresident contractors.

That this was the understanding of the individual legislators is confirmed by the statement of John J. Phillips, Representative from Maricopa County, who said on the House floor:

"I am for Arizona labor on all contract work of the state or any part thereof. But I am not in favor of paying a bonus to Arizona contractors when the outside contractors have to pay the same wage and have the same pro rata of Arizona labor and the difference of cost is made up by the Arizona taxpayers." Journal of the House, Eleventh Legislature of the State of Arizona, 1933, at 184.

■ In interpreting a statute, the fundamental role to which all others are subordinate is that the court shall ascertain and give effect to the intent of the legislature. *Arnold Construction Co. v. Arizona Board of Regents*, 109 Ariz. 495, 512 P.2d 1229 (1973). We do not find any suggestion that A.R.S. § 34–241(B) was intended to or was considered as creating a classification upon which a preference between resident taxpaying contractors might be based.

■ The creation of such a classification would endanger the constitutionality of the enactment. Art. 4, Part 2, § 13 of the Arizona Constitution provides:

"Every Act shall embrace but one subject * * * which subject shall be expressed in the title; * * *."

As to Art. 4, Part 2, § 13, we have recently used the following language:

"The constitutional requirement that every act embrace but one subject and matters properly connected therewith which shall be expressed in the title was designed to enable legislators and the public upon reading the title to know what to expect in the body of the act so that no one would be surprised as to the subjects dealt with by the act. *Industrial Development Authority of Pinal County v. Nelson*, 109 Ariz. 368, 509 P.2d 705 (1973). The title must be worded so that

it puts people on notice as to the contents of the act. *Shaw v. State*, 8 Ariz. App. 447, 447 P.2d 262 (1968)." *White v. Kaibab Road Improvement District*, 113 Ariz. 209, 211, 550 P.2d 80, 82 (1976).

It is not necessary that the title of an act should be a complete index to the legislation contained in the act, but the Constitution has made the title the conclusive index to the legislative intent as to what shall have effect in the act. *Taylor v. Frohmiller*, 52 Ariz. 211, 79 P.2d 961 (1938).

■ In the instant case, the title of A.R.S. § 34–241 notifies all who read that a classification preferring resident taxpaying contractors is being created. It does not even remotely suggest that a special classification establishing a preference between resident contractors is to be created. A court in interpreting a statute should, of course, if possible avoid making the statute unconstitutional. *Kilpatrick v. Superior Court*, 105 Ariz. 413, 466 P.2d 18 (1970); *Greyhound Parks of Arizona, Inc. v. Waitman*, 105 Ariz. 374, 464 P.2d 966 (1970); *Roberts v. Spray*, 71 Ariz. 60, 223 P.2d 808 (1950). And we will give the statute a constitutional construction where possible.

The assistant city attorney, acting as hearing officer for the City of Phoenix, found "[t]hat M. M. Sundt, in 1974, owned property which had a full cash value of $4,258,367.00 and in 1975 owned property which had a full cash value of $4,621,714.-00," and "[t]hat Mardian Construction Company in 1974, owned property which had a full cash value of $209,025.00 and in 1975 owned property which had a full cash value of $212,945.00." He also found "[t]hat the value of the plant and equipment ordinarily required to perform this contract is $2,365,450.00." From the recommendation to the City Council that the contract be awarded to Sundt, it must be concluded that the City Attorney interpreted the Arizona statute as imposing a quantitative burden requiring the successful bidder to own the amount of plant and equipment necessary to perform the contract for which the bid was submitted.

In the Superior Court action, the court found that Respondent Sundt paid taxes on property in values in excess of four million dollars in each of the years 1974 and 1975, whereas Mardian paid taxes in 1975 on property valued slightly in excess of $200,000.00 and in 1974 on property valued slightly in excess of $155,000.00. It concluded that "Sundt is entitled to a preference under A.R.S. § 34–241(B)." The conclusion to award a contract based upon the amount of taxes paid by resident contractors by both the City Attorney and the Superior Court would plainly require a holding that the statute violates the Arizona Constitution, Art. 4, Part 2, § 13, since the title to the Act did not embrace the establishment of a preference between resident contractors.

Such a construction would mean that those contractors owning a lesser amount of equipment or a smaller plant, notwithstanding their financial ability to perform and their skill in their profession, could not successfully bid the larger jobs. A classification would be established based upon the amount of taxes paid. It would also mean that before a job could be awarded to the low bidder, the state agency would be compelled to hold a hearing to determine whether the successful bidder had paid taxes on a plant and equipment in the amount necessary to perform the contract. Such an intolerable result would alone suggest that Sundt's construction of the statute cannot be correct. Nor are we convinced the language of the statute need be construed to reach such a result.

■ Since the Legislature did not regard the Act as establishing a preference between resident contractors, we are of the opinion it should not be construed to mean that differences between resident bidders in the sizes of their plants or amounts of their equipment are significant in determining who is entitled to a preference. And since the legislative purpose in requir-

ing the payment of taxes "on a plant and equipment such as is ordinarily required for performance of the contract for which the bid is submitted" can only have been to ensure that the preference be granted to bona fide Arizona residents, the size of the plant or the amount of the equipment upon which taxes are paid is not relevant, except only to establish that the bidder is a bona fide resident contractor. Therefore, we conclude the legislative intent to prefer resident taxpaying contractors is satisfied by the payment of taxes on a plant and equipment *of the type* required to perform contracts for which the bid is submitted.

One of the meanings of the word "such" as used in the quoted portion of § 34–241(B) reinforces our conclusion. "Such" is defined by Webster (Third New International Dictionary) as:

"1a: of a kind or character about to be indicated * * *."

Accordingly, the payment of taxes "on a plant and equipment *such* as is ordinarily required" does not mean a plant of a particular size or equipment in a particular amount, but means plant and equipment of a kind usually needed for performance of this type of contract.

"The phrase 'such as' is one of general similitude and generally defined as indicating matters 'of the same or like kind' * * *." In re Mandel's Will, 206 Misc. 62, 132 N.Y.S.2d 66 (Sur.Ct.1954).

And *see C. J. Tower & Sons of Buffalo, Inc. v. United States*, 295 F.Supp. 1104, 1108 (Cust.Ct.1969). Different contractors inevitably will have different amounts of equipment and their plants will differ in sizes. The legislative test does not relate to the quantity of equipment or size of a plant. The test is whether there has been payment of taxes on a plant and on equipment of the same or like kind used in the performance of similar contracts.

Had the Legislature intended to create a classification giving a preference to a contractor who had a plant and equipment of the value required to perform the contract for which the bid was submitted, the Legislature would no doubt have said so in plain language.

The peremptory writ of mandamus is directed to be issued.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.