603 P.2d 100

**D. C. SPEER CONSTRUCTION CO., an Arizona Corporation, Appellant,**

**v.**

**ARIZONA DEPARTMENT OF TRANSPORTATION and J. C. Compton Company, an Oregon Corporation, Appellees.**

**No. 1 CA–CIV 4670.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 1, 1979.

Fennemore, Craig, von Ammon & Udall by Calvin H. Udall, C. Owen Paepke, Phoenix, for appellant.

Robert K. Corbin, Atty. Gen. by Albert Morgan, Asst. Atty. Gen., Phoenix, for appellee, Arizona Dept. of Transp.

Treon, Warnicke, Dann & Roush, P.A. by Charles D. Roush, Douglas G. Martin, Phoenix, for appellee, J. C. Compton Co.

## OPINION

EUBANK, Judge.

This appeal involves a dispute between two highway contractors questioning whether one, Compton, was entitled to receive the 5% statutory preference provided by A.R.S. § 34–241, *infra.* Specifically, the issue is one of statutory interpretation involving the meaning of the phrase, "who have paid state and county taxes within the state for not less than two successive years" (A.R.S. § 34–241(B), *infra*), and whether the facts justify the Arizona Department of Transportation's recognition of Compton's claimed preference.

D. C. Speer Construction Co. (Speer), appellant, instituted a special action in Maricopa County Superior Court against the Arizona Department of Transportation (DOT) and J. C. Compton Company (Compton), appellees, to enjoin the award by DOT of two highway construction contracts to Compton as the low bidder. The basis of Speer's claim was that DOT acted unlawfully in awarding the contracts to Compton, by improperly applying the provisions of A.R.S. § 34–241(B). Following extensive briefing and argument, the trial court entered its December 18, 1978 judgment, as amended *nunc pro tunc* on January 15,

1979, approving the action of DOT in awarding the contracts to Compton. Speer appealed from that amended judgment.

Because of the public nature of the contracts involved and the need for expeditious disposition of this appeal, we ordered an accelerated briefing schedule and oral argument. Following oral argument, on March 19, 1979, we affirmed the judgment of the trial court by order, with this written opinion to follow.

In the trial court, the facts were stipulated by the parties, in part, as follows:

1. That plaintiff D. C. Speer Construction Company ("Speer") is an Arizona corporation, which has been qualified to do construction business within the State of Arizona for more than five years.

2. The plaintiff has "satisfactorily performed prior public contracts" and has "paid state and county taxes within the state for not less than two successive years immediately prior to submitting [the bid in question] on a plant and equipment such as is ordinarily required for performance of the contract for which the bid is submitted . . . ." as required by A.R.S. § 34–241(B).

3. The defendant J. C. Compton Company ("Compton") is an Oregon corporation which first qualified to do business in the State of Arizona May 19, 1976, and was licensed as a contractor October 25, 1976.

4. Compton's license to do business was revoked May 10, 1977, for non-publication of Articles of Incorporation, and it was re-licensed or re-qualified on July 14, 1977, and is currently qualified to do business within the State of Arizona.

5. Compton has paid the following taxes which are material to this case:

A. *Ad valorem* taxes for unsecured personal property within the State of Arizona during the year 1977 for equipment brought into the state after January 1, 1977, by payment of $14,371 to the Mohave County Treasurer on June 20, 1977. The "valuation date" for this payment was May 31, 1977. This payment was for plant and equipment such as is ordinarily required for performance of the contract for which the bid is submitted within the meaning of A.R.S. § 34–241(B). Thereafter, Compton has paid all *ad valorem* taxes for unsecured personal property required by any taxing authority during the years 1977 and 1978 by payments on or before November 1, 1978, to the appropriate authorities for plant and equipment such as is ordinarily required for performance of the contract for which the bid is submitted.

6. Bids for the subject projects were opened on November 9, 1978, and November 22, 1978. As to each bid, Compton was the lowest bidder, and Speer was the second lowest bidder. With respect to each contract, the bid of Compton was less than 5% lower than the bid of Speer.

7. Each of the contracts was awarded by the Arizona Department of Transportation to Compton on December 1, 1978 . . . . .

\* \* \* \* \* \*

The subject projects are Federal aid highway construction projects numbered 1R–1 17–2 (68), I–10–6 (77), and I–10–6 (913), and are known as the Cordes Junction and Benson-Steins Pass projects, respectively. The bids submitted were:

| PROJECT | SPEER | COMPTON | DIFFERENCE |
|---|---|---|---|
| I–10–6(77) | $1,435,416.60 | $1,402,467.75 | $ 32,948.85 |
| I–10–6(913) 1R–1 17–2(68) | 3,487,100.00 | 3,438,559.10 | 48,540.90 |
| Totals | 4,922,516.60 | 4,841,026.85 | 81,489.75 |

On the basis of these facts, if Speer is entitled to the statutory 5% preference and Compton is not, Speer should have been awarded both contracts. Speer therefore states the issues on appeal as follows:

1. Did Compton's tax payments beginning on June 20, 1977, constitute the payment of taxes for not less than two successive years prior to the submission of its bids during November 1978?

2. Does ADOT have the discretion to refuse to apply A.R.S. § [34]–241B in the award of highway contracts?

A.R.S. § 34–241 reads:

A. When calling for bids for contracts for public work to be performed on behalf of the state or any political subdivision thereof, which will be paid for from public funds, no bid shall be considered for performance of a contract, including construction work which is not submitted by a bidder duly licensed as a contractor in this state.

B. In awarding the contract for work to be paid for from public funds, bids of contractors who have satisfactorily performed prior public contracts, and *who have paid state and county taxes within the state for not less than two successive years immediately prior to submitting a bid* on a plant and equipment such as is ordinarily required for performance of the contract for which the bid is submitted, or on other real or personal property in the state equivalent in value to such plant, shall be deemed a better bid than the bid of a competing contractor who has not paid such taxes, whenever the bid of the competing contractor is less than five per cent lower, and the contractor making a bid, as provided by this section, which is deemed the better bid, shall be awarded the contract.

C. No contract awarded for public work shall be sublet to a subcontractor who has not paid taxes as required by this section. (Emphasis added).

Speer contends that the payment of taxes "for not less than two successive years prior to submitting a bid" means exactly what it says, and that Compton must have paid

taxes for a time period of at least 24 months or 730 days prior to the submission of bids on the subject projects in order to qualify. Therefore, since Compton paid taxes in June 1977 and before November 1978, they had not paid taxes for "not less than two successive years prior to submitting a bid," but for only 17 months prior to submitting the bids. The essence of this contention, although not specifically articulated, is that the statutory phrase "for not less than two successive years" modifies the word "paid", and refers to the physical acts of paying, which physical acts must have encompassed the lapse of a two year period.

The essence of Compton's contention, on the other hand, is that the statutory phrase "for not less than two successive years" modifies the word "taxes" and measures the amount of taxes required to have been paid, and that if an amount equal to two years' taxes has been paid within the time allowed by the appropriate taxing statutes, the requirements of the preference statutes are met, notwithstanding the fact that the elapsed time from the first payment is less than two years. Thus, Compton contends that it complied with A.R.S. § 34–241(B) by making its annual payment of taxes for 1977 on June 20, 1977, following the assessor's valuation of the property on May 31, 1977, and paid 1978 taxes, as assessed, before the November 1978 bid openings. Compton therefore contends that it paid taxes in full for two successive tax years prior to submitting its bids. Factually, its contention is based on the different nature of the unsecured personal property tax (A.R.S. § 42–601 *et seq.*) as described in *Packard Contracting Co. v. Roberts*, 70 Ariz. 411, 222 P.2d 791 (1950).

We agree with Compton's interpretation of the statute and affirm the judgment of the trial court.

The issue before us is one of first impression. Neither the briefs nor our research reveal an Arizona decision interpreting the phrase "payment of taxes for not less than two successive years" in A.R.S. § 34–241(B), *supra.* Our Supreme Court has held the entire section constitutional in *City of Phoenix v. Superior Court*, 109 Ariz. 533, 514

212

P.2d 454 (1973), and in *Schrey v. Allison Steel Mfg. Co.*, 75 Ariz. 282, 255 P.2d 604 (1953).

Our first task is to determine the intention of the legislature in enacting A.R.S. § 34–241. This task is made simple by our Supreme Court's opinion in *Mardian Construction Co. v. The Superior Court*, 113 Ariz. 489, 557 P.2d 526 (1976), where the court said:

> [I]t is clear that the preference given by the statute (A.R.S. § 34–241) to contractors who paid state and county taxes was intended to give an advantage to residents over nonresident contractors.

113 Ariz. at 492, 557 P.2d at 529. The nature of the state and county taxes referred to in the statute was held in *Gustafson v. Riggs*, 10 Ariz.App. 74, 456 P.2d 92 (1969), to be the *ad valorem* property taxes. Thus, the unsecured personal property tax, A.R.S. § 42–601 *et seq.*, paid by Compton, is applicable to our analysis.

Our next task is to determine whether Compton, by paying taxes in the amounts and on the dates stipulated, paid an amount representing "taxes for not less than two successive years immediately prior to submitting a bid."

■ A.R.S. § 42–601, *et seq.*, the unsecured personal property tax, was intended by the legislature to impose taxation on the personal property of any person not owning real estate within the county of at least $200 value. The assessment and collection of the tax are specially treated by the statute and the legislature intended that they be treated differently than taxes imposed on secured personal property or real property. *See Packard Contracting Co. v. Roberts*, 70 Ariz. 411, 222 P.2d 791 (1950). Thus, the date of assessment, the payment or nonpayment of the tax, and the date on which the unpaid unsecured tax lien attach are different from the secured property taxes and liens. In *Packard*, our Supreme Court held that the unsecured property tax lien attached "as of the time that the amount of the tax is ascertained and assessed."

■ Nothing in our reading of A.R.S. § 42–601, *et seq.*, suggests a 12-month or a 365-day year for the purposes of unsecured personal property taxes. Rather, the tax for the year is due as of the time such tax is ascertained and assessed. *Packard, supra.* The stipulation of facts, *supra*, admits that Compton paid the unsecured personal property tax as ascertained and assessed for 1977 and 1978 and paid them prior to consideration of the bids. In our opinion this is all that A.R.S. § 34–241(B) requires where the unsecured personal property tax is involved. In further support of this conclusion, we note that the legislature has, subsequent to this case, enacted A.R.S. § 42–601.–02, effective after December 31, 1978, providing for proration of the unsecured personal property tax between competing taxing units when the property is entered on the assessment rolls for the first time. Obviously, sometime in the future, Speer's contentions will justify reconsideration due to the change in the law.

We hold that under the facts here, both Speer and Compton qualified for the A.R.S. § 34–241(B) preference and therefore DOT properly awarded the contracts to Compton, the low bidder. *See Mardian Construction Co. v. The Superior Court*, 113 Ariz. 489, 557 P.2d 526 (1976).

The trial court's judgment is affirmed.

HAIRE, P. J., and FROEB, J., concur.